**In re Grant Lee BROCK, Linda Green Brock, Debtors.**

**Grant Lee BROCK, Linda Green Brock, Plaintiffs,**

v.

**AMERICAN SECURITY BANK, Defendant.**

**Bankruptcy No. 81-00429.**
**Adv. No. 81-0233.**

United States Bankruptcy Court, District of Columbia.

Nov. 2, 1982.

John P. Devers, Washington, D.C., for plaintiffs Brock.

Dale Cooter, Washington, D.C., for defendant American Security.

## MEMORANDUM OPINION

ROGER M. WHELAN, Bankruptcy Judge.

### (Debtors' Complaint to Turn Over Property)

The above-captioned adversary proceeding initiated by the debtors in an effort to reclaim an automobile previously repossessed by American Security Bank as a secured creditor presents a troublesome and recurring issue in connection with this and other related consumer bankruptcy cases. The facts are essentially uncontradicted[1] and were stipulated to at the trial hearing for purposes of facilitating the Court's ruling on this matter. Upon the filing of the debtors' voluntary petition in bankruptcy, and at all times subsequent thereto,[2] the individual debtor was current in his payments to the creditor, and current insurance was maintained on the car as required by the security agreement. American Security Bank, the defendant herein, holds a valid security interest in the debtor's 1978 AMC Concord which has not been avoided by either the debtor or the trustee in bankruptcy. Moreover, during the pendency of the bankruptcy and prior to the granting of the debtors' discharge, the debtor did not elect either to redeem the motor vehicle pursuant to § 722 of the Bankruptcy Code ("the Code"), or to enter into any reaffirmation agreement with this secured creditor pursuant to the provisions of § 524(c) of the Code. Subsequent to the granting of the debtors' discharge, the secured creditor repossessed the automobile upon the sole grounds that the filing of a voluntary petition in bankruptcy was an event of default which permitted the creditor's act of repossession pursuant to the provisions of the Uniform Commercial Code. *See* U.C.C. § 9–503 (1977). Immediately after the repossession of the automobile, the debtor immediately instituted this action in the United States Bankruptcy Court to reclaim the vehicle as property of the debtor.

The only issue before the Bankruptcy Court relates to the right of American Security Bank, as a secured creditor, to repossess property of the debtor subsequent to the granting of the discharge[3] where the

---

1. The actual relevant facts and dates with respect to this adversary proceeding between the debtor and American Security Bank as secured creditor are summarized as follows:

 Date of Bankruptcy: July 31, 1981;

 The bankruptcy schedules reflect that American Security Bank is listed as an undisputed secured creditor and was owed $2,494.55 as of the filing of the petition in bankruptcy. That amount of course was further reduced by required periodic payments made by the debtors subsequent to the filing of the petition in bankruptcy;

 The approximate fair market value of the automobile was listed by the debtor in Schedule B–2 as $3,050.00;

 The date the Court entered Debtors' Discharge: November 25, 1981;

 Prior to the date of discharge, the Trustee in Bankruptcy disclaimed any interest in the automobile: November 4, 1981;

 The date of repossession by the secured creditor: December 2, 1981;

 The complaint for turnover of the property filed by the debtor: December 10, 1981.

2. Although as noted in the Answer, and based on statements of counsel at the trial hearing herein, that certain payments were received late by the creditor, there is no contradiction that all of the payments made by the debtor during the course of this proceeding and prior thereto were, in fact, received by the creditor and applied against the debt. Accordingly, there being no other evidence of actual default, the Court proceeded to hear the case based on the substantive issues raised by the pleadings.

3. For a related issue dealing with the rights of secured creditor to repossess motor vehicles prior to the grant of discharge, where again there has been no redemption or reaffirmation on the part of the debtor, *see* the *per curiam* ruling of the United States Bankruptcy Court for the District of Maryland *In re John Gilliss Perry Jr., Riggs National Bank of Washington v. Perry*, Bankr. No. 81–1–1455, Adv. No. 82–0181, and *In re Wayne Kotanko, Riggs National Bank of Washington v. Kotanko*, Bankr. No. 81–1–1154, Adv. No. 82–0182 (Bankr.D.Md. 1982) (decided together).

sole event of default is the filing of a voluntary petition in bankruptcy.[4]

For the reasons set forth in this Memorandum Opinion, the Court will grant full relief to the debtor herein.

### Conclusions of Law

The primary issue raised by the pleadings in connection with the pending adversary proceeding relates to the enforceability of a bankruptcy clause such as is set forth in the installment contract entered into by the debtors herein, Grant Lee Brock and Linda Green Brock, and Orbit AMC/Jeep.[5] Orbit assigned its rights and obligations under the contract to American Security Bank, through whom the Brocks' purchase of the automobile was financed. Under the terms of the contract American Security Bank retained a security interest in the 1978 Concord.

The secured creditor's argument is predicated upon the premise that the subject contract is not an executory contract in the bankruptcy sense and that accordingly the provisions of Section 365(e)(1) do not apply in this proceeding. Furthermore, in the absence of either redemption or reaffirmation by the debtor, the secured creditor maintains that it has a right to repossess the subject collateral, particularly where the right is exercised subsequent to the granting of the discharge, based upon the further legal premise that the consensual lien arising from the grant of a security interest has survived the discharge and that the protection of the automatic stay is therefore no longer available to the debtor. See Section 362(c), 11 U.S.C. § 362(c). The secured creditor relies upon a United States District Court holding In re Bell[6] wherein the District Court held that:

"This Court grants that the Bankruptcy Court retains the power to fashion equitable remedies. This power, however, is not an unrestricted one, and where Congress has, as a part of the legislative scheme, provided for specific remedies and methods, the courts must be circumspect in utilizing their equitable authority to design other remedies or methods. Thus although it is certainly arguable that redemption and reaffirmation provisions are of doubtful value to a debtor, that policy determination must be left to the Congress and not assumed by the Courts. The legislative history . . . reveals that in balancing the competing interests of debtor and creditor, the Congress decided that the debtor could retain possession only under certain statutorily-imposed conditions or qualifications."

In re Bell, supra, 15 B.R. at 861–62.

 It is clear from the facts of this adversary proceeding that the motor vehicle

---

**4.** It is undisputed between the parties that the security agreement expressly provides that the filing of a voluntary petition in bankruptcy is, in fact, a default under the terms of the security agreement. It should be further noted that any *actual* default (other than the invocation of the insolvency clause, discussed *infra*) under the terms of the agreement as set forth would of course raise valid grounds for the exercise by the secured creditor of its rights under the Uniform Commercial Code. This Court is, therefore, limiting its ruling to the sole issue raised by counsel at the time of trial hearing on this matter.

**5.** Paragraph 18(d) of the subject contract provides in pertinent part:

"Time is of the essence of this contract. The buyer agrees, in the event this contract is placed for collection in the hands of an attorney, not a salaried employee of the holder of the contract to pay attorney's fees not exceeding fifteen (15) percent of the amount due and payable hereunder, plus court costs.

In the event buyer defaults in any payment due hereunder or fails to comply with any of the terms or conditions hereof, or a proceeding in Bankruptcy, receivorship or insolvency be instituted by or against the buyer or his property . . . , the seller shall have the right, at his or its election, to declare the unpaid balance, together with any other amount for which the buyer shall have become obligated hereunder, to be immediately due and payable. Further, in any such event, seller or any sheriff or any other officer of the law may take immediate possession of said property without demand, including any equipment or accessories thereto; and for this purpose, seller may, in lawful manner only, enter upon the premises where such property may be and remove same."

**6.** 8 B.R. 549 (Bkrtcy.E.D.Mich.S.D.1981), *rev'd on other grounds,* 15 B.R. 859 (D.C.E.D.Mich. 1981).

at issue was property of the estate by reason of the debtor's interest therein and the broad inclusive nature of section 541(a). Moreover, section 541(c) clearly manifests an intention that a bankruptcy clause will not affect this result.[7] *Cf.* Bankruptcy Act of 1898, § 70(b) (1962) (Section 541(c) of the Bankruptcy Code clearly reflecting a distinct policy change from pre-existing bankruptcy law.) The express wording of § 541(c) indicates a manifest intention to bring in all property interests of the debtor regardless of any pre-existing agreement or provision that would in any way limit the concept of property by reason of such an insolvency provision. The further application of § 365(e) of the Code is not necessary to a resolution of the issue before this Court because whether or not the contract in question is executory cannot in any way derogate from the ultimate issue before the Court in the *post*-discharge period. It is clear from the legislative history, and from the expressed intention of Congress to protect the "fresh start of debtors", that the invocation of insolvency statutes is not favored. This is clear even under pre-Code bankruptcy law dealing generally with forfeitures wherein courts of equity traditionally abhor a forfeiture. *Finn v. Meighan,* 325 U.S. 300, 65 S.Ct. 1147, 89 L.Ed. 1624 (1945).

■ Extensive rights are provided a trustee in bankruptcy in dealing with executory contracts or unexpired leases within the purview of § 365. However, whether or not this contract is executory, is, as pointed out above, not an appropriate issue for consideration by the Court once the discharge in bankruptcy has been granted and there has been no invocation of rights under § 365, by either the trustee or the debtor.[8]

■ Accordingly, what was originally property of the estate by reason of the filing of the debtor's voluntary petition, is now solely property of the debtor by reason of the trustee's abandonment of the property and the subsequent granting of the discharge in bankruptcy. Moreover, once the discharge in bankruptcy was granted, the debtor lost all benefit of the automatic stay,[9] but was clearly entitled to the protection envisioned within the effects of discharge as set forth under § 524(a) of the Bankruptcy Code. That is, although the automatic stay is no longer in effect, the effect of discharge under § 524(a) of the Code is in effect but relates and affects only the personal liability of the debtor and, accordingly, the lien, not having been avoided by either the debtor or the trustee in the pre-discharge period, now survives unaltered in this post-discharge period. This effect in no way should alter the debtor's rights vis-a-vis the originally contractual

7. 11 U.S.C. § 541(a) provides that:
"... Such estate is comprised of all the following property, wherever located:
(1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case."
Section 541(c) of the Bankruptcy Code further provides that
"... Except as provided in paragraph (2) of this subsection, an interest of the debtor in property becomes property of the estate under subsection (a)(1), (a)(2) or (a)(5) of this section notwithstanding any provision—
(A) that restricts or conditions transfer of such interest by the debtor; or
(B) that is conditioned on the insolvency or financial condition of the debtor, on the commencement of a case under this title, or on the appointment of or the taking possession by a trustee in a case under this title or a custodian, and that effects or *gives an option*

to effect a forfeiture, modification, or termination of the debtor's interest in property." (Emphasis added)

8. Clearly, under well-established bankruptcy law, a contractual obligation of this nature would not ordinarily be deemed an executory contract simply because the sole and remaining obligation under the contract is that of the debtor to maintain periodic contractual payments called for in the contract itself. For an excellent analysis of what constitutes an executory contract in the bankruptcy context, *see* Countryman, *Executory Contracts in Bankruptcy: Part I,* 57 Minn.L.Rev. 439 (1973) and cases cited therein. For a different result, *cf. In re Horton,* 15 B.R. 403 (Bkrtcy.E.D.Va.1981); Julius, *Classifying Rights and Interests, under the Bankruptcy Code,* 55 Am.Bankr.L.J. (Summer 1981).

9. *See* § 362(c).

obligation, so long as there is no underlying actual default on the part of the debtor with respect to this underlying contractual obligation. Moreover, in the absence of an actual default, the creditor should not be able to avail itself of a claimed default by reason of the debtor's filing of a voluntary petition in bankruptcy. This is so because of two basic legal premises, namely, (1) to permit repossession by sole reliance on the invocation of the bankruptcy clause would in effect result in a forfeiture, which courts of equity traditionally abhor. *See Finn v. Meighan, supra; Matter of Rose,* 21 B.R. 272 (Bkrtcy.D.N.J.1982), and (2) the invocation of such a clause is contrary to the well-established public policy now evinced by the provisions of the Bankruptcy Code.[10]

█ It should be further noted that, just as the contract at issue is not deemed executory in a bankruptcy sense, the same contract is not the type of contract in a contractual sense wherein the creditor could properly assert that the filing of a voluntary petition in bankruptcy would constitute an anticipatory breach of that contract.[11]

The secured creditor further advances the argument that if repossession is not sanctioned under the present circumstances in this proceeding, that it will be prejudiced by reason of the fact that it is barred, at any time, from recovering a deficiency balance from the debtor by reason of his discharge in bankruptcy and the effects thereunder as set forth in § 524(a). While this is true because of the effect of discharge as noted by the secured creditor under § 524(a) of the Code, this is an inherent risk of doing business which must be assumed by every secured creditor and which cannot properly be attributed to the mere fact that the debtor has initiated bankruptcy proceedings. Moreover, the secured creditor never loses its rights as a secured creditor in view of the fact that the lien survives the debtor's discharge.[12]

It is also argued by the secured creditors that the payments being made by the debtor subsequent to the filing of his voluntary petition in bankruptcy are strictly gratuitous in view of the effect of discharge and that the debtor could obviously discontinue making such payments at any time. In the absence of a valid reaffirmation agreement approved by the United States Bankruptcy Court, this contention of the secured creditor is certainly true but misses the mark: the invocation of an insolvency clause relied upon by the secured creditor was the sole event of default or condition of default. In the event that the debtor fails to make the agreed-upon installment payments called for under the security agreement, or for that matter in the event of any other specific default (other than reliance upon the aforementioned insolvency clause), the secured creditor is still entitled in the post-discharge period, to exercise its state-created creditor remedies. The only such remedy not available is, of course, the right to recover a deficiency balance which is now barred because of the effect of discharge pursuant to 11 U.S.C. § 524(a). However, this detriment does not, in any legal way, affect the secured creditor's rights vis-a-vis its validly constituted consensual lien created under the security agreement. The secured creditor, in other words, will always

**10.** *See* §§ 363(*l*), 365(e) and 541(c); House Report No. 95–595, 95th Cong., 1st Sess. (1977) 346; 348–9, 369; Senate Report No. 95–989, 95th Cong., 2d Sess. (1978) 57, 59, 83, U.S.Code Cong. & Admin.News 1978, p. 5787.

**11.** *See* 17 Am.Jur.2d *Contracts* §§ 445, 448 and 455 (1964); *Phelps v. Herro,* 215 Md. 223, 137 A.2d 159 (1957).

**12.** It should also be remembered that the status of a secured creditor, in a bankruptcy code context, is specifically treated in § 506(a) which provides:

"(a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to the setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim ..."

have recourse to the collateral itself and this, in any secured transaction, is the primary source of economic protection for such creditors. To now permit the secured creditor the right of repossession solely upon reliance of the insolvency clause and the debtor's having filed a voluntary petition in bankruptcy would grant, in effect, the secured creditor rights which he did not have prior to the filing of the petition in bankruptcy. Because Congress has expressly declared that the invocation of such insolvency clauses is now contrary to public policy, the creditor should not be heard to complain.

■ It is clear from the effect of the court's ruling with specific reference to the nature of the underlying contract, and the now-present effect of the discharge in the post-discharge period, that the secured creditor stands basically in no worse situation than he was in prior to the filing of the petition in bankruptcy so long as the debtor continues to satisfy fully his obligations under the security agreement. In fact, during the pre-discharge period, where the debtor continues to meet fully his contractual obligations under the security agreement, the debtor is in fact providing a form of adequate protection specifically envisioned under § 361 of the Bankruptcy Code, and accordingly the secured creditor at any rate, during that period, would have no grounds for relief from the stay. *See generally, Perry/Kotanko, supra.*

Accordingly, for the reasons set forth in this Court's Memorandum Opinion, the Court will grant relief to the Plaintiff and will award all costs to the plaintiff upon the proper filing of a Bill of Costs in accordance with the rules of Court.

Debtor's counsel is hereby directed to submit to the Court within three days of this Memorandum Opinion an appropriate order in conformance with the Court's findings, and to serve on defendant's counsel a copy of the proposed Order prior to entry by this Court.