**In re Robert Leslie HUNTER, Jr. and Rebecca Jean Hunter, Debtors.**

**Bankruptcy No. BK90–70578.**

United States Bankruptcy Court,
N.D. Alabama, W.D.

Nov. 26, 1990.

Charles Clyde Tatum, Jr., Jasper, Ala., for debtors/defendants.

Robert E. Moorer, Birmingham, Ala., for plaintiff.

## MEMORANDUM OF DECISION

GEORGE S. WRIGHT, Chief Judge:

This matter came before the Court on SouthTrust Mobile Services, Inc.'s Motion for Relief from the Stay or, in the alternative, Motion to Require Debtors to Redeem or Surrender Collateral or Expressly Reaffirm Debt.

SouthTrust Mobile Services, Inc., contended that the Debtors, *who had not been in default on payments to SouthTrust,* were required by 11 U.S.C. § 521(2)(A) to *reaffirm* their obligation to SouthTrust, *surrender* the mobile home collateral *or redeem* the collateral by payment of the value of the collateral. The Creditor contended that the Debtors could not simply retain the mobile home and continue making installment payments.

Despite the fact that the main objective of SouthTrust's motion, continuing the personal liability of the Debtors, was rendered moot by the Hunters' discharge June 28, 1990, the Court will issue a ruling in this matter.

After reviewing the record of the case and the applicable law, it is the opinion of the Court that SouthTrust Mobile Services Inc.'s motions are due to be DENIED.

## FINDINGS OF FACT

On August 31, 1988, Robert Hunter, Jr. and Rebecca Jean Hunter, purchased a new 1988 mobile home from Jasper M.H. Brokers, Inc. They executed a security agreement which was purchased by Movant, SouthTrust Mobile Services, Inc. SouthTrust filed a UCC–1 financing statement with the Walker County Probate Judge's Office September 14, 1988, perfecting its security interest in the mobile home.

On March 13, 1990, the Hunters filed a joint voluntary petition under Chapter 7 of Title 11 U.S.C. The Debtors listed SouthTrust Mobile Services, Inc., as one of two secured creditors. The Hunters listed SouthTrust's claim against them on the mobile home at $32,000; the market value, at $28,000. SouthTrust filed a proof of claim for $69,101.03 (including interest for more than thirteen years of payments) on the obligation as of March 19, 1990.

Debtors also checked the box under "REAFFIRM" by the SouthTrust obligation on their Exhibit C, Debtor's Statement of Intentions on Consumer Debts Secured by Property of the Estate, filed with the Chapter 7 petition.

On April 24, 1990, at the Hunters' Section 341(a) meeting, the Debtors orally changed their stated intention and told Debtors' attorney and the interim Trustee that they did not wish to reaffirm or surrender the mobile home. The Debtors have also declined requests of the movant to redeem the mobile home by paying the lump sum of their debt to SouthTrust, to surrender it to repossession or to execute a reaffirmation agreement which would act as a post-discharge continuation of personal liability.

Evidence shows that the Debtors, before and after their petition, have continued the payments to SouthTrust and maintained the insurance on the mobile home without default in either area.

On May 4, 1990, SouthTrust filed its Motion for Relief from Stay contending its interest in the mobile home was not adequately protected and additionally, that the Debtors had no equity in the property and that SouthTrust's interest was superior to that of the Trustee. The motion cited a provision in the security agreement which said the Hunters would be in default if they became insolvent or filed bankruptcy. That motion was set for a preliminary hearing May 17, 1990.

Then a final hearing was set for June 28, 1990. On June 27, 1990, however, SouthTrust's Counsel asked for a continuation due to a conflict with a jury trial. That continuation was granted with consent of Debtors' Counsel to July 19, 1990.

On June 28, 1990, the scheduled hearing date, the Hunters were granted their discharge by the Court, releasing them of all personal liability for debts existing as of the date the petition was filed March 13, 1990—including their obligation to South-Trust. Consequently, the heart of this issue has already become moot in the normal process of the Hunters' Chapter 7 case through the Bankruptcy Court system.

On July 17, 1990, SouthTrust's Counsel asked for another continuance of the hearing on the Creditor's motion because of a conflict with Counsel's attendance at a meeting of the State Bar.

Creditor's Counsel also amended its motion to a Motion for Relief from Stay or, in the alternative, a Motion to Require Debtors to Redeem or Surrender Collateral or Expressly Reaffirm Debt. The hearing on the motion was continued to August 16, 1990 with consent of Debtor's Counsel.

On August 16, 1990, the case came before the Court and the Court gave Debtor's Counsel fifteen days to file a reply to Creditor's brief. The case was thus taken under submission September 1, 1990.

## CONCLUSIONS OF LAW

As stated above, the bedrock question presented by this case was answered on June 28, 1990, when the Hunters were discharged of personal liability on debts outstanding at the filing of their Chapter 7 petition. That question was whether the Hunters could continue to pay off the installment loan secured by their mobile home residence without reaffirming to continue their personal liability after bankruptcy discharge. Since their June 28, 1990 discharge, the Debtors have been making their payments and they have no personal liability on the loan.

■ However, the legal issue presented by this case deserves further resolution for this Creditor and these Debtors. At issue is whether 11 U.S.C. § 521(2)(A) gives a debtor in the Hunters' situation four options, as contended by the Debtors; or only three, as contended by SouthTrust Mobile Services. This Court believes that the better view is that four alternatives are available. They include: 1) retaining the secured property (when the debtor is not in default); 2) surrender of the secured property to repossession; 3) redemption of the property by the debtor as provided in Section 722 and 4) reaffirmation.

■ If a debtor chooses to *surrender* collateral to the creditor, the amount by which the debtor's obligations exceed the value of the collateral, if any, will be discharged. If the debtor chooses to *redeem* the collateral under 11 U.S.C. § 722, he/she may do so by paying the creditor the amount of the secured claim or the fair market value of the collateral, whichever is less. If the debtor chooses to *reaffirm*, he/she may enter into a new post-petition agreement for repayment with the creditor which will create a new, enforceable personal liability in the debtor.

■ The most controversial of the options provided under Section 521(2)(A) is the first stated—retention. If the debtor who is not in default under the security agreement chooses to *retain* the collateral by continuing payments, his bankruptcy discharge will relieve him of personal liability for a deficiency in the event of future default.

There is a split in the case law on this issue and specific, official legislative history on Section 521(2)(A) is nonexistent. However, the plain language of the statute and the general policies underlying the Bankruptcy Act mitigate against interpreting the section to diminish a debtor's substantive rights.

I.

## THE BETTER VIEW IS THAT A DEBTOR HAS FOUR OPTIONS UNDER SECTION 521(2)(A).

A. A DEBTOR WHO IS NOT IN DEFAULT MAY CHOOSE TO RETAIN THE COLLATERAL UNDER SECTION 521(2)(A).

The code section at issue in this case states the following:

**Debtor's duties.**

The debtor shall—

(2) if an individual debtor's schedule of assets and liabilities includes consumer debts which are secured by property of the estate—

(A) within thirty days after the date of filing of a petition under chapter 7 of this title or on or before the date of the meeting of creditors, whichever is earlier, or within such additional time as the court, for cause, within such period fixes, the debtor shall file with the clerk a statement of his intention with respect to the *retention* or *surrender* of such property, and, *if applicable*, specifying that such property is claimed as exempt, that the debtor intends to *redeem* such property, or that the debtor intends to *reaffirm* debts secured by such property; ... (emphasis added).[1]

---

1. The rest of Section 521, which also has relevance in this discussion, reads as follows:
   **Debtor's duties.**
   The debtor shall—

(2) if an individual debtor's schedule of assets and liabilities includes consumer debts which are secured by property of the estate—

SouthTrust urges this Court to adopt the view that a Chapter 7 debtor is limited to surrendering, redeeming or reaffirming as held by *In re Edwards*, 901 F.2d 1383 (7th Cir.1990). However, a larger body of authority holds the contrary: *Lowry Federal Credit Union v. West*, 882 F.2d 1543 (10th Cir.1989); *In re Belanger*, 118 B.R. 368 (Bkrtcy.E.D.N.C.1990); *In re Crouch*, 104 B.R. 770 (Bkrtcy.S.D.W.Va.1989); *In re Peacock*, 87 B.R. 657 (Bkrtcy.D.Colo.1988); *In re Berenguer*, 77 B.R. 959 (Bkrtcy.S.D. Fla.1987); *In re Barriger*, 61 B.R. 506 (Bkrtcy.W.D.Tenn.1986) and *In re Ballance*, 33 B.R. 89 (Bkrtcy.E.D.Va.1983).

The *Lowry* case involves facts almost identical with the Hunters' situation. The 10th Circuit held that since the debtors were not in default under their security agreement, they could not be forced to give up possession of the collateral, a pickup truck. The Court said: "While a debtor may redeem property, subject to 11 U.S.C. § 722, or reaffirm a debt, subject to 11 U.S.C. § 524(c)(4), nothing within the Code makes either course exclusive." *Lowry* at 1546.

The *Lowry* court also said that under Section 704(3)[2] the *Chapter 7 trustee* is the proper party to act against a debtor for failure to comply with Section 521(2)—but that the Code provides no penalty for failure to comply, nor specific remedy for a Creditor for a debtor's non-compliance. "The creditor's right to demand redemption or reaffirmation is neither enhanced nor diminished because of that failure (to comply)," the decision said at 1546.

The appeals court further held:

Applying the law as we find it, we cannot say the district court erred in affirming the judgment of the bankruptcy court. In sum, although we regard as mandatory the provisions of Code § 521(b), we do not believe those provisions make redemption or reaffirmation the exclusive means by which a bankruptcy court can allow a debtor to retain secured property. When the state of the evidence indicates neither the debtor nor the creditor would be prejudiced, a bankruptcy court may allow retention conditioned upon performance of the duties of the security agreement as a condition of retention.

*Lowry* at 1547.

### B. 11 U.S.C. § 365(e) INVALIDATES "IPSO FACTO" CLAUSES WHICH SEEK TO MAKE BANKRUPTCY OR INSOLVENCY INSTANCES OF DEFAULT.

■ 11 U.S.C. § 365(e) expressly invalidates "ipso facto" clauses, or portions of security agreements whereby a debtor is "in default" purely for reason of bankruptcy filing.[3] SouthTrust argues that the Hunters are in default because they became insolvent and filed bankruptcy. However, the Creditor presented no evidence at hearing of insolvency or of any damage to SouthTrust from the Hunter's insolvency and/or bankruptcy. *Lowry* dismissed such clauses:

Notwithstanding a provision in an executory contract or unexpired lease, or in applicable law, an executory contract or unexpired lease of the debtor may not be terminated or modified, and any right or obligation under such contract or lease may not be terminated or modified, at any time after the commencement of the case solely because of a provision in such contract or lease that is conditioned on—
(A) the insolvency or financial condition of the debtor at any time before the closing of the case; or
(B) the commencement of a case under this title; or
(C) the appointment of or taking possession by a trustee in a case under this title or a custodian before such commencement.

---

(B) within forty-five days after the filing of a notice of intent under this section, or within such additional time as the court, for cause, within such forty-five day period fixes, the debtor shall perform his intention with respect to such property, as specified by subparagraph (A) of this paragraph; and
(C) nothing in subparagraphs (A) and (B) of this paragraph shall alter the debtor's or the trustee's rights with regard to such property under this title.

**2.** 11 U.S.C. § 704(3) provides the following:
**Duties of trustee.**
The trustee shall—
(3) ensure that the debtor shall perform his intention as specified in section 521(2)(B) of this title; ...

**3.** 11 U.S.C. § 365(e)(1) provides:

We are in accord with the district and bankruptcy courts that the mere filing of the petition has not put Lowry (the creditor) in any more jeopardy than that which existed prior to the filing of the petition. Lowry did not introduce any evidence of actual prejudice but merely relied upon speculative arguments over dreadful possibilities that may result if the debtors fail to exercise proper care of the truck or ultimately fail to pay. While evidence of actual prejudice might persuade us to the contrary, we can see no harm resulting to Lowry from the order of the bankruptcy court.

*Lowry* at 1546.

In the Eleventh Circuit, bankruptcy courts have also refused to recognize such clauses as valid. *See In re Berenguer, supra* (court refused to allow creditor to repossess as long as debtor's bankruptcy filing and discharge were the only "default") and *In re Farmer*, 13 B.R. 319 (Bkrtcy.M.D.Fla.1981) (court refused to approve reaffirmation agreement between debtor and undersecured creditor where the only default was under an "insecurity clause").

Legally, the Hunters were not in default at the time of the hearing on SouthTrust's motion.

### C. STANDARD FORMS USED IN BANKRUPTCY FILINGS DO NOT CONVEY SUBSTANTIVE RIGHTS.

■ The Hunters, or someone typing on their behalf, put three "Xs" in the box under "REAFFIRM" on a standard form, "Exhibit C, Debtor's Statement of Intentions Consumer Debts Secured by Property of the Estate Pursuant to Section 521 of Title 11, United States Code." The Hunters signed the form. However, the signature of this type of form, in itself, conveys no substantive right to the creditor.

As stated generally in *In re Peacock, supra* at 660:

The rights of the parties in bankruptcy are determined by the Bankruptcy Code and by case law. Section 521(2)(A) is essentially procedural and does not improve or enlarge substantive rights of creditors. *In re Winters, supra* [69 B.R. 145] at 147. [(Bkrtcy.D.Or.1986)] The words "if applicable" in Section 521(2)(A) do not narrow the rights or options of a non-defaulting debtor with respect to collateral. *See*, 11 U.S.C. § 521(2)(C).

In addition, the Debtors are not necessarily bound to the contents or arrangement of an official form. An official form can be modified. In fact, Bankruptcy Rule 9009 provides that official forms may be used "with alterations as may be appropriate."

It is interesting to note that the form in question in the Hunter case provides for *five* choices for a debtor under Section 521 —"Retain," "Surrender," "Claim as exempt," "Redeem," and "Reaffirm." (When a debtor has equity in property which is collateral, certain exemptions may be claimed in addition to the four options stated previously.)

### D. SINCE THE HUNTERS ARE NOT IN DEFAULT, THE FIRST OPTION UNDER SECTION 521(2)(A), RETAINING THE COLLATERAL, WAS AVAILABLE TO THEM.

■ In another case almost exactly on point, a North Carolina bankruptcy court in July of 1990, upheld a couple's right to simply retain their mobile home residence under Section 521(2)(A) and continue payments to the creditor which held the security interest. In *In re Belanger, supra,* Home Owners Funding Corporation had contended that the statute provided a Chapter 7 debtor with only three alternatives: reaffirming, redemption or surrender.

Interestingly, *Belanger* points out in its discussion that Section 521(A)(2) (added to the Code in the Bankruptcy Amendments and Federal Judgeship Act of 1984), had its genesis in a proposal submitted by a coalition of banks, credit unions, finance companies, oil companies and retailers. *In re Barriger, supra* at 509, also suggested that while an earlier proposal indicated an intent to punish the debtor for failing to state and perform intentions on collateral, the sting was removed from the final version of Section 521. As enacted by Con-

gress, Section 521(2)(A) is more an informational provision so secured creditors might learn of the intent of the debtor without going through the expense of an adversary proceeding. *Belanger* at 370; *Barriger* at 509.

Unfortunately, no Senate or House Report accompanied the Bankruptcy Amendments and Federal Judgeship Act of 1984. As *Belanger* notes at 372:

> The closest legislative statement interpreting § 521(2) is a statement made by Representative Rodino in response to a request by Representative Synar that he "explain what rights are reserved to the debtor and trustee under § 521(2)(C)." 130 Cong.Rec. H1810 (daily ed. Mar. 21, 1984). According to Chairman Rodino, the duty imposed under § 521(2) "does not affect the substantive provisions of the code which may grant the trustee or debtor rights with regard to such property." *Id.* It appears from that statement that the debtor's rights with respect to property were to be left intact.

The *Belanger* court, and the bankruptcy Court in *In re Crouch, supra,* both based their decision on the premise that limiting the debtor to three options under Section 521(2)(A) would impair the major Congressional policy goal of the Bankruptcy Code—the debtor's fresh start. Additionally, they considered the text of the statute: the debtor must file a statement of intent as to his choice of retention or surrender, and "if applicable," the statement must specify exemption, reaffirmation or redemption. These cases reasoned that if the debtor chose to continue payments, then the above choices are not "applicable."

In the Hunter case, it appears from the claim filed by SouthTrust that it is grossly undersecured for the obligation it claims. Such is a risk of the marketplace for creditors dealing in credit for highly depreciable consumer items like mobile homes. In *Riggs National Bank of Washington, D.C. v. Perry,* 729 F.2d 982 (4th Cir.1984), the court rejects the creditor's claim that the risk of depreciation of property and of default by the debtors increases after the filing of bankruptcy. In *Riggs,* a creditor

sought a modification of the automatic stay and an order that a Chapter 7 debtor reaffirm the obligation or redeem the collateral. The court denied both:

> The bank's sole legitimate concern, therefore, is that its lien exceeds the present value of the collateral. Allegedly, it is placed at even greater risk because of the highly depreciable character of its security (an automobile). Nevertheless, appellant's position is no more fragile, due to the Chapter 7 filing alone, than that of any lender under an installment sales contract. We can muster even less sympathy for institutional lenders; they are fully cognizant of the risks inherent in the making of loans, default among them, and receive substantial interest payments to help offset those risks. This Court declines to exact additional obligations from debtors who merely file under Chapter 7 while they maintain their fiscal responsibilities.

*Riggs* at 985.

The *Lowry* court also addressed the risk of quick depreciation of property in a situation where a debt is not reaffirmed. Mere conjecture without evidence of actual prejudice to the creditor's interest is insufficient, the 10th Circuit court said. In the absence of evidence of actual prejudice, a bankruptcy court may allow the option of paying installments under the original agreement.

## II.

THERE IS NO RECORD SHOWING 1984 AMENDMENTS WERE INTENDED TO CHANGE THE MAJOR POLICY GOAL OF THE BANKRUPTCY CODE.

A. THE EDWARDS CASE IS AN ISOLATED INTERPRETATION OF SECTION 521(2)(A).

The *Edwards* case, the only case cited in SouthTrust's brief, states baldly: "The 1984 Consumer Finance Amendments to the Bankruptcy Code were intended, *inter alia,* to protect creditors from the risks of depreciating assets and to keep credit costs from escalating because of the too-ready availability of discharge (citing only *In re*

*White,* 49 B.R. 869 (Bkrtcy.W.D.N.C.1985) as support for the proposition)," *Edwards supra* at 1386.

■ While the above may have been the *actual* intent of the lobbying groups which persuaded Congress to adopt the present Section 521(2)(A), Courts may only look at the language of the statute as finally enacted, and the actual specific legislative history for a guide to what *Congress,* not the consumer credit industry, intended to accomplish. *In re Eagle,* 51 B.R. 959 (Bkrtcy.N.D.Ohio 1985) points out at 962:

> The earlier proposed amendment to section 521 indicates a legislative intent to punish the debtor for failure to timely state and perform his intention to redeem or reaffirm. Congress retrenched from that position after debate and compromise and fashioned a procedure which encourages out-of-court compromise between debtor and creditor in restructuring the debt. The new section is not intended to abrogate those substantive rights of exemption and redemption retained by the debtor. The notice and time limitation components of section 521(2) are intended to facilitate speedy resolution of debt compromise and repayment.

It should also be noted that the *White* case dealt with the interpretation of 11 U.S.C. §§ 707(b) and 101(7) to determine whether a Chapter 7 case should be dismissed for "substantial abuse" of the bankruptcy system. The only connection that case had with *Edwards* was that both Section 707(b) and Section 521(2)(A) were included in the Bankruptcy Amendments and Federal Judgeship Act of 1984—as were hundreds of other issues.

As noted above, there is no official legislative history to shed light on the implementation of Section 521(2)(A). However, the comment of Chairman Rodino on the meaning of Section 521(2)(C)—that it was not intended to alter the debtor's substantive rights—would support ruling for the debtor's right to retain collateral.

In *Edwards,* the Seventh Circuit also cites *In re Bell,* 700 F.2d 1053 (6th Cir. 1983) as support for its view. Unfortu-

nately, *Bell* ruled under pre–1984 law and is of no assistance in divining the intent of Congress on Section 521(2)(A).

B. SOUTHTRUST STILL RETAINS ITS SECURITY INTEREST IN THE MOBILE HOME AND IN THE EVENT OF POST–DISCHARGE DEFAULT MAY PROCEED IN REM AGAINST THE COLLATERAL.

■ While the Hunters could not be deemed to be in default under the Bankruptcy Code to justify an order granting SouthTrust the relief it seeks, SouthTrust retains its security interest in the mobile home despite the Hunters' discharge from personal liability.

The *Peacock* case discussed such a residual interest in a creditor:

> Should the Debtors default in the future, then the Creditor would well be within its rights to repossess the Dodge Van. *In re Carey,* 51 B.R. 294, 295 (Bkrtcy.D.D. C.1985). *In re Brock, supra* [23 B.R. 998] at 1003. [(Bkrtcy.D.C.1982)] A discharge granted to these Debtors will extinguish any personal liability on the Contract to the Creditor, but the Creditor's lien, if unaltered, will survive the bankruptcy and the Creditor can proceed with an *in rem* action against the collateral. *Chandler Bank of Lyons v. Ray,* 804 F.2d 577 (10th Cir.1986); *In re Lawrence, supra* [54 B.R. 1] at 2 [(Bkrtcy.D. S.C.1984)]; *In re Cassell, supra* [41 B.R. 737] at 741 [(Bkrtcy.E.D.Va.1984)]; *In re Brock, supra* at 1002; *In re Rosenow,* 22 B.R. 99, 100 (Bkrtcy.W.D.Wash.1982). The Creditor's right to repossession upon a future default and to exercise its rights solely against the collateral is the same right afforded any secured creditor in any bankruptcy case. *See, In re Brock, supra* at 1003–1004.

*Peacock, supra* at 660.

Thus, SouthTrust's ability to act against the collateral will depend on how Alabama state law defines default under this contract and the state law remedies against collateral available to creditors upon default.

## CONCLUSION

Consequently, based on the plain language of the statute, the sparse legislative history and the primary policy goal of the Bankruptcy Code, this Court must find that there are four alternatives (not including a fifth option to claim exemptions) available to the debtor under Section 521(2)(A). One of those alternatives, as stated in the statute, is "retention" of the collateral when the debtor is not in default. That is essentially the case of the Hunters.

If the Hunters had not filed a bankruptcy petition, state law would not have allowed this secured Creditor to repossess their mobile home. So it is illogical to suppose that bankruptcy triggers a right to foreclose that would not otherwise exist under state law.

It is the finding of this Court that a bankruptcy court may allow a debtor to retain secured property while continuing to make installment payments as provided by Section 521(2)(A).

This memorandum shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052. A separate order will be entered consistent with this opinion.

DONE AND ORDERED.

ORDER DENYING RELIEF FROM STAY AND DENYING A MOTION REQUIRING DEBTORS TO REDEEM OR SURRENDER COLLATERAL OR EXPRESSLY REAFFIRM DEBT

This cause came before the Court on SouthTrust Mobile Services, Inc.'s Motion for Relief from Stay or, in the alternative, Motion to Require Debtors to Redeem or Surrender Collateral or Expressly Reaffirm Debt.

After due consideration, it is by the Court

ORDERED, ADJUDGED AND DECREED:

1. That since Debtors have not been in default, SouthTrust Mobile Services, Inc.'s Motion for Relief from Stay under the provisions of 11 U.S.C. § 362(d) is due to be and is hereby DENIED.

2. That the Court finds that there are four alternatives available to such Debtors under 11 U.S.C. § 521(2)(A): 1) retaining the secured property (when the debtor is not in default); 2) surrender of the secured property to repossession; 3) redemption of the property by the debtor as provided in Section 722 and 4) reaffirmation.

3. That, consequently, SouthTrust Mobile Service's Motion to Require the Hunters to Redeem or Surrender Collateral (their mobile home) or to Expressly Reaffirm Debt under 11 U.S.C. § 521(2)(A), is also due to be and is hereby DENIED.