**In re Warren L. TAYLOR, Jr. and Cathy L. Taylor, Debtors.**

**Warren L. TAYLOR, Jr. and Cathy L. Taylor, Debtors/Appellants,**

v.

**ALBANY GOVERNMENT EMPLOYEES FEDERAL CREDIT UNION, Creditor/Appellee.**

**Civ. No. 92–69–ALB/AMER(DF).**

United States District Court, M.D. Georgia, Albany/Americus Division.

Aug. 27, 1992.

As Amended Aug. 31, 1992.

Kenneth Alan Dasher, Albany, for plaintiff.

Cawthon Hester Custer, Henry C. Custer, Albany, for defendants.

## ORDER

FITZPATRICK, District Judge.

Warren and Cathy Taylor ("Debtors") appeal the decision of the Bankruptcy Court, Judge John T. Laney, III, ordering them to file a notice of intention to redeem or reaffirm property they seek to retain after the filing of their Chapter 7 bankruptcy pursuant to 11 U.S.C. § 521(2)(A).[1] 138 B.R. 1018. The Debtors argue that § 521 provides them with the option to retain their property and keep current on their obligation under the existing contract. The Bankruptcy Court disagreed.

## I. FACTS

The facts of this case are not in dispute and were stipulated by the parties. Counsel for Albany Government Employees Credit Union ("AGE" or "Creditor") objected to the inclusion of facts not in the record within the body of the Debtors' brief. The objection is well founded; therefore, facts not a part of the stipulation were not considered by the court in reaching this decision.

The Debtors filed a petition under Chapter 7 of the Bankruptcy Code on February 20, 1991. AGE holds a first lien on two cars owned by the Debtors. The first contract, executed on May 16, 1990, is secured by a 1991 Chevrolet S–10 pickup truck. This vehicle was worth $8500 with a balance owing AGE of $7,928.62 on the date the petition was filed. The second contract was on September 9, 1990. It is secured by a 1985 Chevrolet Caprice Classic. The

---

**1.** All subsequent code citations will be to Title 11, United States Code.

Debtors owed $2,172.11 on this contract on the day the petition was filed. At the time the car was worth $3100. Debtors were current on the payments on both of these contracts as of the filing date and continue to be current on those payments.

 Debtors filed a "Statement of Intention" regarding the property that is securing debt. They failed to indicate on that statement whether they would reaffirm[2] or redeem[3] the two cars the Debtors wanted to retain. At the first meeting of the creditors, the Debtors stated their intention to neither reaffirm nor redeem, but rather to simply retain the vehicles and keep current under the existing loan agreements. AGE is willing to reaffirm the obligation with the Debtors. Debtors continue to refuse to execute any reaffirmation agreement with AGE.

## II. ISSUES

The issue that this court must address is whether § 521 provides that the debtor who wishes to retain encumbered property must redeem the property or reaffirm the obligation or may the debtor simply retain and remain current on the existing contractual obligation.[4]

If § 521 allows the debtor to retain the property and keep current, does the existence of a "default on filing clause" in the contract put the debtor in default? In other words, are "ipso facto" clauses, as they are sometimes called, valid in nonexecutory contracts?

## III. DISCUSSION

### A. *Section 521 Options for the Debtor*

The Bankruptcy Judge was correct when he noted in his memorandum opinion of March 29, 1992, that there is no statement by the U.S. Court of Appeals for the Eleventh Circuit on this issue. In fact since the section was enacted in 1984, only three Circuit Courts have addressed this issue and they are split as to what the debtor may elect to do under § 521. *Lowry Fed. Credit Union v. West*, 882 F.2d 1543 (10th Cir.1989); *Home Owners Funding Corp. v. Belanger (In re Belanger)*, 962 F.2d 345 (4th Cir.1992); *contra Matter of Edwards*, 901 F.2d 1383 (7th Cir.1990).

The majority opinion is that § 521 is primarily a procedural and notice provision. This view allows a debtor to choose from among four options under § 521—retain and keep current, retain and reaffirm, retain and redeem, or surrender—and then notify the creditors of what choice has been made. *In re Belanger*, 962 F.2d at 347; and *Lowry*, 882 F.2d at 1546. The minority rule, and that adopted by the bankruptcy court in this case, is that § 521 only provides the debtor with the three options explicitly listed in the section—reaffirmation, redemption, or surrender. *Matter of Edwards*, 901 F.2d at 1385.

AGE contends that § 521(2) requires a debtor who wishes to retain property either to reaffirm or to redeem. This argument is based on what AGE says is a reading of the plain language of the statute. "When a statute is clear on its face, its 'plain meaning' must control, and there is no need to look beyond the statute itself to determine what it means." *In re Davis*, 22 B.R. 644, 648 (Bankr.M.D.Ga.1982) (citations omitted). AGE's insistence that the court must apply the plain meaning of the statute is not very helpful, however. It is obvious from the numerous cases cited by both parties that this statute is less than a model of clarity. It is also apparent that reasonable judges can disagree about what § 521(2) allows a debtor, or a court, to do with respect to the strictures of § 521(2).

---

**2.** Reaffirmation involves the execution of a new agreement with the creditor requiring that the debtor will remain personally liable after discharge for any deficiency. 11 U.S.C.A. § 524(c) (1979 & Supp.1992). This agreement is only available with the creditor's consent. *In re: Home Owners Funding Corp. v. Belanger*, 128 B.R. 142, 145 (E.D.N.C.1990).

**3.** Redemption requires that the parties determine a fair market value for the asset at the time the petition is filed. The debtor must then pay that amount to the creditor in a lump sum. 11 U.S.C. § 744.

**4.** The surrender portion of § 521 is not at issue in this appeal and the court will not address it in this order.

Nonetheless, the court will address this argument.

AGE insists that § 521(2) only provides a debtor with two choices if the debtor elects to retain the encumbered property—either the debtor must reaffirm the obligation or the debtor must redeem the asset. In support of this argument AGE first directs the court's attention to the phrase "if applicable." AGE contends that to determine what this phrase means, the court must examine the language immediately before the phrase. The debtor must choose either to retain or surrender the property "and, if applicable, specify[ ] that such property is claimed as exempt, that the debtor intends to redeem such property, or that the debtor intends to reaffirm debts secured by such property." § 521(2)(A). Reaffirmation or redemption, the words after "if applicable," would not pertain to a situation where the debtor chose to surrender the property; therefore, no further election would be necessary and the choices listed would not be "applicable."

While this argument is quite persuasive, it ignores two points. First, the statute is not so clear on its face that the court should only look to the bare words in deriving a meaning. The Court of Appeals for the Tenth Circuit found that § 521 does not provide the exclusive list of choices available to the bankruptcy court or to the debtor. *Lowry*, 882 F.2d at 1546. The Fourth Circuit even rebutted the very argument that AGE attempts to make now. That court found that "[t]he phrase 'if applicable' is redundant if, contrary to *Collier [on Bankruptcy]*, and the district court, the options given the debtor are considered to be exclusive." *In re Belanger*, 962 F.2d at 348.

The second point that this argument ignores is that such a construction leaves the debtor with effectively only one choice—reaffirmation. *In re Belanger*, 962 F.2d at 348. An individual who has filed for bankruptcy will most likely be unable to fulfill the requirements of § 722, to redeem the property in one lump sum. Since redemption of the property is effectively precluded, a debtor who wished to retain his property would be in the unenviable position of having to reaffirm the personal liability on the debt. Also, as the court in *Belanger* noted, the reaffirmation must be with the consent of the secured party. This means that a debtor would be at the mercy of whatever terms the creditor wished to impose in agreeing to the reaffirmation. *Id.* The court must, therefore, look to the broader context of § 521, i.e., the purposes of the Bankruptcy Code generally, to obtain guidance in its interpretation. The overriding policy of the bankruptcy code is to provide debtors with a fresh start. *See Local Loan Company v. Hunt*, 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934). Requiring a debtor who is otherwise current on his or her obligations to negate the benefits of bankruptcy by reaffirming post-discharge personal liability on the note clearly frustrates the ability of the debtor to begin that fresh start.

There is no prejudice to the creditor in allowing the debtor to retain and keep current. As long as the debtor remains current, the creditor receives the full value of the contract. If there is a default, the creditor may still repossess the property. It merely loses any deficiency between the value of the property and the loan balance; but the creditor would lose this amount anyway if the debtor surrendered the property and then received discharge in bankruptcy. Likewise, the creditor would lose any deficiency if the debtor could redeem the property and later received a discharge.

Contrary to the Seventh Circuit's concern, retaining the property and keeping current on the obligation is no license to the debtor to allow the property to waste away. *Matter of Edwards*, 901 F.2d at 1386. The original obligations to insure and maintain the property still remain under the existing, pre-bankruptcy loan agreement. Nothing in that agreement is changed except the personal liability of the debtor for some hypothetical, future deficiency and that risk existed when the creditor extended the credit in the first instance.

AGE's second argument is premised on the statutory construction principle that a code section is to be read and interpreted

as a whole. However, AGE's argument ignores § 521(2)(C). Similarly, the Fourth Circuit failed to address the impact of subparagraph (B) in reaching its conclusion. *In re Belanger*, 962 F.2d at 347. This court believes that once all three subparagraphs are read and interpreted together the proper conclusion is still that reached by the Fourth Circuit. *Id.*

AGE argues that under § 521(2)(B) the debtor "shall perform his intention with respect to the property" within 45 days of filing the notice of intention. Allowing the debtor to retain and keep current, AGE argues, leaves him or her nothing to perform within the 45 days required by § 521(2)(B). However, this court reads § 521(2)(B) to require performance within 45 days if one of the alternatives listed in subsection (A) is chosen by the debtor. If none of the options in (2)(A) is selected, then the 45 day requirement in (2)(B) does not apply to the case.

The court's reading is supported by including § 521(2)(C) in the interpretative equation. Subparagraph (C) provides explicitly (and unlike subparagraph (A) very plainly) that none of the debtor's rights in the collateral is affected by subparagraphs (A) or (B). If § 521 is read as AGE would have the court read it, upon the filing of bankruptcy the debtor would relinquish any rights under the existing contract and effectively surrender all rights in the encumbered property pending the execution of a reaffirmation agreement. The Fourth Circuit reached this same conclusion in *In re Belanger*, 962 F.2d at 347.

The Debtors' primary argument is that this court should adopt the majority rule simply because it is the majority. The Debtors contend that because all three Florida Districts [5] and one District in Alabama [6] have agreed with their position as opposed to just the three districts in Geor-

gia,[7] their rule should be adopted by this court on a vote of 4 to 3. This court is of the opinion that there is more to the law than an electoral process. Simply because a rule is in the majority is insufficient reason alone for the court to adopt it; however, in this case, the majority rule does appear to be the more properly reasoned one.

■ The court's holding in this case is simply this: As long as a debtor is not otherwise in default in his or her obligations to the creditor, the debtor may retain and keep current on the obligation to the bank and must indicate on the proper form the intention to retain the property. This result more closely enforces the policy and purpose of the bankruptcy code and of the Congress in its enactment of § 521(2).

This leaves the further question of whether the Debtors were otherwise in default in their performance of the contract with AGE. Specifically, is the "default on filing of bankruptcy" clause in the contract valid, as a matter of law, so as to place the debtors in default on their obligations to AGE?

### B. "Ipso Facto" Clauses and 11 U.S.C. § 365(e)

■ Again, this court is faced with a question upon which the Eleventh Circuit Court of Appeals has not spoken, and upon which there is a split in the circuits that have addressed the issue. Precisely put the issue is whether a "default-on-filing clause" places a debtor in default despite otherwise fully performing the contract? While this issue is not strictly before the court since AGE has not claimed that the Debtors are in default, both parties briefed the issue and it is crucial to the court's holding in part III.A. that the Debtors not be in default under the security agreement.

---

5. *In re Donley,* 131 B.R. 193 (Bankr.N.D.Fla. 1991); *In re Windham,* 136 B.R. 878 (Bankr. M.D.Fla.1992); *In re Berenguer,* 77 B.R. 959 (Bankr.S.D.Fla.1987).

6. *In re Hunter,* 121 B.R. 609 (Bankr.N.D.Ala. 1990).

7. The Debtors' brief cites *Matter of Horne,* 132 B.R. 661 (Bankr.N.D.Ga.1991), *In re Goldsby,* Case No. 188–00215, slip op. (Bankr.S.D.Ga. 1989), and this case *In re Taylor,* 138 B.R. 1018 (Bankr.M.D.Ga.1992). The court was unable to locate *Goldsby* from the Southern District of Georgia, so the court does not know if the Debtors are correct or not.

The bankruptcy court in this case held that § 365(e),[8] which voids these "ipso facto" clauses, applied only to executory contracts and unexpired leases. Since an automobile installment contract is a nonexecutory contract, § 365 does not apply and the "ipso facto" clause is valid. The court cited no authority for this conclusion.

The U.S. Court of Appeals for the Sixth Circuit reached a similar conclusion when applying a different section of the bankruptcy code. That court held that once the property at issue has been abandoned by the trustee, as in this case, the "bankruptcy clause" became operative and caused a default on the security agreement. *In re Bell*, 700 F.2d 1053, 1058 (6th Cir.1983) (citing *In re Schweitzer*, 19 B.R. 860, 865 (Bankr.E.D.N.Y.1982)). The court found that § 541(c), which expressly voids all "ipso facto" clauses, only operated with respect to the trustee in bankruptcy. *Bell*, 700 F.2d at 1058. Once the trustee abandoned the property, § 541(c) no longer applied and the "ipso facto" clause once again became operative. *Id.*

The Bankruptcy Court for the District of Nevada agreed. *In re Mitchell*, 85 B.R. 564, 566 (Bankr.D.Nev.1988). Also citing *Schweitzer*, the court in *Mitchell* held that public policy, the risk of loss to the creditor, and the depreciating value of the collateral require a finding that the "ipso facto" clause operates against the debtor.

The Fourth Circuit, and bankruptcy courts in this circuit, disagree with this conclusion. The circuit court has held these "ipso facto" clauses invalid as a matter of law. *Riggs Nat. Bank v. Perry*, 729 F.2d 982, 984–85 (4th Cir.1984). That court reasoned that to enforce "ipso facto" clauses would intrude upon the clear Congressional purpose to provide debtors a fresh start toward reorganizing their financial affairs. *Riggs*, 729 F.2d at 984–85.

In this circuit, the Bankruptcy Court for the Northern District of Alabama reached the same conclusion. Relying heavily on *Lowry Fed. Credit Union v. West*, 882 F.2d 1543 (10th Cir.1989), the court held that § 365 "expressly invalidates 'ipso facto' clauses." *In re Hunter*, 121 B.R. 609, 615 (Bankr.N.D.Ala.1990). Like the court below in this case, there is little discussion in *Hunter* of why this is true. However, enforcing an "ipso facto" clause against the Debtors penalizes them for exercising their federal right to file bankruptcy. *See In re Peacock*, 87 B.R. 657, 659 (Bankr. D.Colo.1988). Debtors should not be penalized by operation of law simply because they exercised their right to file for bankruptcy.

There is no prejudice to the creditor in such a situation. Simply filing bankruptcy, by itself, places the creditor in no less secure a situation than existed pre-filing. At the outset of the lender/borrower relationship, the creditor assumes the risk that the debt will not be repaid. This is precisely why the creditor retains an interest in the property during repayment. The "ipso facto" clause does nothing to further protect the creditor than those provisions already available to the creditor.

On the other hand, debtors are directly and severely prejudiced. The "ipso facto" clause operates to frustrate the "fresh start" debtors seek by filing bankruptcy. It further complicates the process of financial reorganization by placing an otherwise current debt in default status.

There is clear Congressional dissatisfaction with the "ipso facto" clause. Sections 363(1), 365(e), and 541(c) all deal with situations when such clauses are held invalid. Additionally, "[i]t is clear from the legislative history and from the express intention

---

**8.** 11 U.S.C. § 365(e)(1) provides, in pertinent part:

Notwithstanding a provision in an executory contract ..., an executory contract ... may not be terminated or modified, and any right or obligation under such contract or lease may not be terminated or modified, at any time after the commencement of the case solely because of a

provision in such contract or lease that is conditioned on

(A) the insolvency or financial condition of the debtor at any time before the closing of the case; or

(B) the commencement of a case under this title....

of Congress to protect the 'fresh start of debtors' that the invocation of insolvency statutes is not favored." *Peacock*, 87 B.R. at 659 (quoting *In re Brock*, 23 B.R. 998, 1002 (Bankr.D.C.1982)). The Fourth Circuit concurred in this reasoning when it held "ipso facto" clauses unenforceable as a matter of law. *Riggs*, 729 F.2d at 984–85.

## IV. CONCLUSION

The court holds that a Chapter 7 bankrupt may elect to retain encumbered property and keep current on the financial obligation, pursuant to § 521(2), unless the debtor is in default under the security agreement with the creditor.

Secondly, the court holds that "ipso facto" or "default-upon-filing" clauses are unenforceable as a matter of law and cannot, therefore, work a default on a debtor who is otherwise current on his contract.

In this case, the Debtors are current on their obligation to AGE. At the time the Debtors filed their Chapter 7 bankruptcy, the value of the property securing the debt, under both contracts, exceeded the balance due under the contract. There has been no evidence, or argument, that AGE will be harmed or prejudiced by allowing the Debtors to fulfill their contractual obligation to AGE.

Accordingly, the judgement, Order and Memorandum Opinion of the Bankruptcy Court is REVERSED.

SO ORDERED.