### In re Budd George BELANGER, Janice Leigh Belanger, Debtors.

### Bankruptcy No. 90–00848–ATS.

United States Bankruptcy Court,
E.D. North Carolina.

July 12, 1990.

Theodore A. Nodell, Jr., Raleigh, N.C., for Home Owners Funding Corporation.

John T. Orcutt, Raleigh, N.C., for debtor.

Holmes P. Harden, Raleigh, N.C., for trustee.

## ORDER DENYING MOTION TO COMPEL DEBTORS TO REAFFIRM, REDEEM OR SURRENDER COLLATERAL AND DENYING MOTION TO DELAY ENTRY OF DISCHARGE

A. THOMAS SMALL, Bankruptcy Judge.

The matter before the court is the "Motion for an Order Compelling the Debtors to Reaffirm, Redeem or Surrender Collateral and Motion to Continue Entry of Discharge" filed by Home Owners Funding Corporation on May 8, 1990. A hearing was held in Raleigh, North Carolina on June 5, 1990.

The facts are quite simple. Mr. and Mrs. Belanger filed a joint petition for relief under chapter 7 of the Bankruptcy Code on March 14, 1990, and HOFC holds a first lien on the debtors' residence, a mobile home.

The debtors' obligation to HOFC is a consumer debt secured by property of the estate, and the debtors filed a "Statement of Intention," as required by 11 U.S.C. § 521(2)(A). The statement indicated that the debtors would retain their mobile home, but did not indicate that the debtors would reaffirm the debt or that they would redeem HOFC's collateral pursuant to 11 U.S.C. § 722. In fact, the debtors do not intend to reaffirm or redeem. Instead, they plan to retain the collateral and continue making monthly payments under their contract with HOFC. At present, the debtors are current in their payments to HOFC and there is no allegation that the debtors are otherwise in default.[1]

The issue before the court is whether § 521(2) requires a chapter 7 debtor with a secured consumer debt to reaffirm the debt, to redeem the collateral under § 722 or to surrender the collateral, or whether a chapter 7 debtor has other options such as retaining the property by maintaining the loan in a current status as proposed by the Belangers in this case.

Section 521(2)(A) provides that if an individual debtor's schedule of assets and liabilities includes consumer debts which are secured by property of the estate

.     .     .     .     .

(A) within thirty days after the date of the filing of a petition under Chapter 7 of this title or on or before the date of the meeting of creditors, whichever is earlier, or within such additional time as the court, for cause, within such period fixes, the debtor shall file with the clerk a statement of his intention with respect to the retention or surrender of such property and, if applicable, specifying that such property is claimed as exempt, that the debtor intends to redeem such property, or that the debtor intends to reaffirm debts secured by such property.

HOFC contends that § 521(2)(A) provides a chapter 7 debtor with only three alternatives: reaffirmation, redemption or surrender. The debtors, however, argue that the statute does not limit a debtor to those three choices.

The statute requires a debtor to file a statement of intention with respect to the "retention or surrender" of the property and "if applicable" the statement must specify that the property is exempt, that the debtor intends to redeem, or that the debtor intends to reaffirm.

The court finds that the Belangers have complied with § 521(2)(A). They filed a statement of intention with respect to retention or surrender of the property, expressing their intention to retain the property. They did not need to specify whether they would redeem, reaffirm or surrender because those options were not "applica-

---

1. The loan documents were not offered into evidence. Whether or not the loan agreement contains a bankruptcy default (or "ipso facto") clause is not known. In any event, such clauses are not valid in this circuit, *Riggs National Bank of Washington, D.C. v. Perry (In re Perry)*, 729 F.2d 982 (4th Cir.1984), and the effect of such a clause is not an issue in this case.

ble." None of those options was chosen by the Belangers. They intend to keep their mobile home by keeping their mobile home loan with HOFC current.

One of the primary purposes of the modern American bankruptcy law is to give honest debtors a fresh start, *Local Loan Co. v. Hunt*, 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230, 1235 (1934), the heart of which is the debtor's discharge, H.R.Rep. No. 595, 95th Cong., 1st Sess. 384 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787. The interpretation of § 521(2)(A) advocated by HOFC would severely impede the debtor's fresh start, and such a limiting interpretation should not be adopted unless it is clearly required by the statute.[2] In this instance, however, the plain meaning of the statutory language, as well as the legislative history, sparse as it is, support the debtor's construction.

Section 521(2)(A), which was added to the Bankruptcy Code by the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, 98 Stat. 333–392 (1984), is essentially a *notice* requirement to permit secured creditors to ascertain the debtor's intentions early in the case. H. Sommer, "The 1984 Changes in Consumer Bankruptcy Law," 31 *Practical Lawyer* 45, 55 (Jan. 1985).

The idea for § 521(2)(A) came from a proposal submitted by a coalition of bankers, credit unions, finance companies, oil companies and retailers. The proposal was called the "Proposed Consumer Bankruptcy Improvements Act of 1981" and was described in hearings before the Senate's Subcommittee on Courts of the Committee on the Judiciary, on April 3 and 6, 1981. *Hearings Before the Subcomm. on Courts of the Sen. Comm. on the Judiciary*, 97th Cong., 1st Sess. J–97–11 (1981).[3] Several witnesses appearing on behalf of the coalition and on behalf of the American Bankers Association explained how secured creditors in consumer chapter 7 cases often had no information concerning their collateral.[4] The automatic stay prohibits contact with the debtor and typically the secured creditor would know nothing about the fate of its collateral.[5] The complaint was that

---

2. *See generally*, K. Gross, "Preserving a Fresh Start for the Individual Debtor: The Case for Narrow Construction of Consumer Credit Amendments" 135 U.Pa.L.Rev. 59 (Dec.1986).

3. The language of § 521(2)(A), which is at issue in this case, is essentially the same as that of section 1 of the proposed legislation. *See id.* at 72.

4. *Id.* at 39–106 (testimony of the coalition consultants, Prof. Jonathan Landers, Claude Rice, and Alvin O. Wiese, Jr.) and 144–53 (statement of American Bankers Association representatives, Walter W. Vaughan and A. Thomas Small).

5. At the Subcommittee Hearings on April 3, 1981, Mr. Claude Rice and Mr. Alvin O. Wiese, Jr., representing the consumer credit coalition, explained the amendment to § 521 and why it was necessary:

Mr. Rice:

A basic simplified statement of what is proposed is that you impose upon the debtor a duty, at the time he files his petition, to indicate to the court and to his creditors what he intends to do with his secured property. It is a debtor's statement of what he intends to do. Then impose a duty on him to do whatever he suggests.

At the present time, the creditors are restrained from doing anything but the debtor is not required to do a thing but just sit back and stonewall it. That causes an unnecessary burden.

*Id.* at 44.

Mr. Wiese:

I think most important is this. The thing we have seen under the new code is the inability between debtors and creditors to communicate with each other and resolve many of their own problems.

We subscribe 100 percent to the idea of the automatic stay, which was tightened up under the new Bankruptcy Code. In fact, the automatic stay for all practical purposes prohibits a creditor from contacting a debtor.

But the other side of that is that the code neglects or fails to place sufficient responsibilities on the debtor who has elected the process of bankruptcy to communicate and contact his creditors at an early stage in the proceeding in order to resolve some of the problems which otherwise end up in adversary or court proceedings, simply for the purpose of achieving the communication necessary.

Let me illustrate what happens when a bankruptcy is filed. The bankruptcy is filed. The debtor's lawyer does not contact the creditor. In many cases, we find that the problem arises where the debtor is not represented by a lawyer at all. The creditor wonders what is going to happen to the automobile; what happens to his collateral. Does he intend to return it.

the secured creditor would often incur the expense of filing an adversary proceeding to lift the stay[6] only to learn that the debtor all along intended to surrender the property without a contest. The solution to the problem was to require an early disclosure of the debtor's intention with respect to the property and early performance. If the creditor were to know what the debtor intended to do with the collateral, it would know how to proceed, such as by entering into a reaffirmation agreement, picking up the collateral, or seeking to modify the stay.[7]

The many consumer amendments proposed by the coalition of consumer lenders were the subject of considerable debate and consumer bankruptcy amendments were proposed by the Senate Judiciary

Committee in 1982[8] and in 1983.[9] In its report accompanying S. 2000, the Senate Judiciary Committee stated that the amendments to § 521 "encourage the debtor and creditor to settle issues involving secured debt without judicial proceedings, but also enable the parties to identify disputed matters at an early stage so that they may be resolved at the meeting of creditors. This will avoid the time and expense of separate and delayed proceedings." S.Rep. No. 97–446, 97th Cong., 2d Sess. 41 (May 21, 1982).

There was no Senate or House Report which accompanied the Bankruptcy Amendments and Federal Judgeship Act of 1984 and the legislative history is "woefully inadequate." *In re Barriger*, 61 B.R. 506, 509 (Bankr.W.D.Tenn.1986), quoting *In re Eagle*, 51 B.R. 959, 961 (Bankr.N.D.Ohio

> The debtor keeps on driving the automobile. He is making payments, but the creditor knows that once the discharge is granted he may or may not have an enforceable obligation or the debtor may or may not continue to pay for it.
> It is our perception that a great many of the adversary proceedings that are clogging the court system and literally creating chaos in the areas in the courts with which I am acquainted because of the number of these proceedings could be resolved if the debtor was made to undertake the responsibility of giving creditors information before the first meeting of creditors, as to what they intend to do with the collateral. Do they intend to redeem it, surrender it, reaffirm the obligation, or what.
> Many of the petitions for reclamation and petitions for relief for automatic stay would be eliminated and a great cost saving would occur—not only to the creditors and debtors but to the court system as well.
> I think this problem needs to be addressed in connection with debtors' duties.

*Id.* at 46.

At the Subcommittee Hearings on April 6, 1981, the prepared statement of Walter W. Vaughn, representing the American Bankers Association, also described the problem and explained the amendment as follows:

> Often the debtor or the debtor's attorney will not communicate the debtor's intention with regard to secured property. The debtor will simply continue to use the property and the value of the property declines. The burden then falls upon the creditor to seek a resolution of the matter.
> The remedies for this problem available to the creditor are not very attractive or cost efficient. The creditor may seek relief from the automatic stay by filing a $60 petition. This fee plus the time and expense of a hearing on the appropriate relief or adequate pro-

> tection often makes this option cost prohibitive. Further, the outcome of the proceeding is far from certain. The court may determine that the stay should not be lifted and provide some sort of protection rather than having the property returned to the creditor.

> *     *     *     *     *

> These requirements will simply require the debtor to make certain decisions early in the proceeding on issues that must be resolved at some point in the proceeding. Therefore, the debtor would have no additional burdens. However, the creditor will be relieved of significant burdens and will avoid unnecessary uncertainty and costs.

*Id.* at 149.

6. In 1981 an action to modify the stay was an adversary proceeding. Bankruptcy Rule 701(6) (superseded August 1, 1983).

7. One commentator described the proposal as follows: "The idea behind this proposal is sound. It simply forces the consumer debtor to do in chapter 7 what is required by a chapter 13 plan: announce his/her intentions for dealing with secured creditors and their claims." R. Ginsberg, "The Proposed Bankruptcy Improvements Act: The Creditors Strike Back," 3 N.Ill. U.L.Rev. 1, 37 (Winter 1982).

8. S. 2000, 97th Cong., 2d Sess. (May 27, 1982), S.Rep. No. 97–446.

9. S. 445, 98th Cong., 1st Sess. (April 26, 1983), S.Rep. No. 98–65 ("Omnibus Bankruptcy Improvements Act of 1983") described in R. Ginsberg, "The Bankruptcy Improvements Act—An Update," 3 N.Ill. U.L.Rev. 235 (Spring 1983). *See also*, H.R. 4786, 97th Cong., 1st Sess. (October 20, 1981).

1985). The closest legislative statement interpreting § 521(2) is a statement made by Representative Rodino in response to a request by Representative Synar that he "explain what rights are reserved to the debtor and trustee under § 521(2)(C)." 130 Cong.Rec. H1810 (daily ed. Mar. 21, 1984). According to Chairman Rodino, the duty imposed under § 521(2) "does not affect the substantive provisions of the code which may grant the trustee or debtor rights with regard to such property." *Id.* It appears from that statement that the debtor's rights with respect to the property were to be left intact.

The court is aware that the Court of Appeals for the Seventh Circuit recently held that a chapter 7 debtor's options under § 521 are limited to surrender, redemption or reaffirmation. *Matter of Edwards*, 901 F.2d 1383 (7th Cir.1990). The court is also aware that there is authority to the contrary. *Lowry Federal Credit Union v. West*, 882 F.2d 1543 (10th Cir.1989); *In re Peacock*, 87 B.R. 657 (Bankr.D.Colo.1988); *In re Berenguer*, 77 B.R. 959 (Bankr.S.D. Fla.1987); *In re Barriger*, 61 B.R. 506 (Bankr.W.D.Tenn 1986); and *In re Ballance*, 33 B.R. 89 (Bankr.E.D.Va.1983).

In *Edwards* the Seventh Circuit concluded that "[w]hen a debtor is relieved of personal liability on loans secured by collateral, the debtor has little or no incentive to insure or maintain the property in which a creditor retains a security interest." 901 F.2d at 1386. It is doubtful that a debtor would fail to insure or maintain his residence, and his investment in it, simply because he no longer has personal liability for the underlying debt. Furthermore, the failure to insure or the failure to maintain the collateral are typically events of default which would permit the secured creditor to accelerate the indebtedness and repossess the collateral. In fact, default clauses which permit the lender to declare a default in the event that the creditor deems its security interest insecure are specifically authorized by the Uniform Commercial Code and may be exercised by a secured lender if it has a good faith belief that the prospect for payment is impaired. *See* J. White and R. Summers, *Uniform Com-*

*mercial Code* § 25–3 (3d ed. 1990) (discussing Uniform Commercial Code § 1–208).

Section 521 requires a chapter 7 debtor with a secured consumer debt to state the debtor's intention regarding retention or surrender of the collateral. If the debtor intends to surrender the property, reaffirm the debt or redeem the collateral, that intention must also be disclosed. The language of the statute and the meager legislative history support a conclusion that a chapter 7 debtor has alternatives, such as the one chosen by the debtors in this case, other than to reaffirm, redeem or surrender the collateral. The debtors have fulfilled their duty under § 521(2)(A) and there is no reason to delay their discharge. Accordingly, the motion to compel reaffirmation, redemption or surrender is DENIED and the debtors' discharge shall be entered.

SO ORDERED.