### In the Matter of Henrietta WINDHAM, Debtor.

### Bankruptcy No. 91–05176–8B7.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Feb. 12, 1992.

William Haapa, Tampa, Fla., for debtor.

Larry M. Foyle, Tampa, Fla., for movant.

Larry S. Hyman, trustee.

## ORDER DENYING MOTION TO DETERMINE SECURED STATUS

THOMAS E. BAYNES, Jr., Bankruptcy Judge.

THIS MATTER came on for consideration upon Debtor's Motion to Determine Secured Status. Debtor is seeking to value, pursuant to the provisions of Section 506(a),[1] a 1989 Toyota Celica automobile (the collateral) in which World Omni Financial Corporation (Omni) claims a secured interest. Omni opposes the attempted valuation because Debtor does not intend to redeem the collateral under Section 722. Omni argues that Section 521 restricts Debtor to three options with regard to the collateral: Debtor must either (1) redeem the collateral with a single lump-sum cash payment pursuant to Section 722, (2) reaffirm the loan agreement with Omni pursuant to Section 524(c), or (3) surrender the collateral. The Court, having reviewed the Motion and having heard argument, finds as follows:

Debtor filed her Chapter 7 petition on April 22, 1991. Along with her petition, Debtor filed a statement of intention, pursuant to Section 521(2), indicating she intended to retain the collateral and reaffirm the debt pursuant to Section 524(c). On June 21, 1991, the Trustee's Report of No Distribution was filed abandoning, pursuant to Section 554(c), all property of the estate not already claimed as exempt. At all times relevant to this Order, Debtor was not in default with regard to her obligation to Omni. On July 2, 1991, Debtor filed the instant Motion to Determine Secured Status, in actuality seeking to value the collateral with the apparent intention of stripping Omni's lien under the provisions of Section 506(a) and (d). Debtor claimed the debt owed Omni was approximately $26,872.70, with the value of the collateral at the time of filing the petition being $7,850.00. Omni responded to Debtor's Motion by stating its opposition to valuation because Debtor was not seeking to redeem the collateral.

## I. Is the Language of Section 521 Exclusive?

The first issue presented is whether the language of Section 521 requires a Chapter 7 debtor to make a choice between reaffirmation, redemption or surrender.[2]

1. All Section references are to the Bankruptcy Code (11 U.S.C.).

2. The relevant portions of Section 521 state: The debtor shall—
 \* \* \* \* \* \*
 (2) if an individual debtor's schedule of assets and liabilities includes consumer debts which are secured by property of the estate—
 (A) ... the debtor shall file with the clerk a statement of his intention with respect to the retention or surrender of such property and, if applicable, specifying that such property is claimed as exempt, that the debtor intends to redeem such property, or that the debtor intends to reaffirm debts secured by such property;
 \* \* \* \* \* \*
 (C) nothing in subparagraph[ ] (A) ... of this paragraph shall alter the debtor's or the trustee's rights with regard to such property under this title.

Omni has presented several interrelated arguments in support of its position limiting Debtor to redemption of the collateral, reaffirmation of the debt or surrender of the collateral. According to Omni, the language of Section 521 is mandatory and, when combined with a reading of the official bankruptcy forms, legislative history and policy rationales presented in case law, leaves Debtor no options beyond those specifically listed in Section 521. Omni contends that by allowing Debtor to retain the collateral via a judicially created fourth option under Section 521, the Court will be invading the province of the legislature.

In furtherance of this argument, Omni asserts the filing of a Chapter 7 petition accelerates all debts. Since there is no deceleration mechanism in a Chapter 7 case, Debtor is forced to seek reaffirmation of the debt, redemption of the collateral with a single lump-sum payment or surrender of the collateral. Allowing Debtor to retain the collateral without reaffirming or redeeming would have the effect of forcing Omni to accept a form of installment redemption.

This Court disagrees with Omni's position that Section 521 requires Debtor to redeem, reaffirm or surrender, and chooses instead to follow the conclusion of the majority of the courts which have dealt with this issue. *Lowry Federal Credit Union v. West*, 882 F.2d 1543 (10th Cir.1989); *In re Donley*, 131 B.R. 193 (Bankr.N.D.Fla. 1991); *In re Hunter*, 121 B.R. 609 (Bankr. N.D.Ala.1990); *In re Belanger*, 118 B.R. 368 (Bankr.E.D.N.C.), *aff'd*, 128 B.R. 142 (E.D.N.C.1990); *Berenguer v. Bank South, N.A. (In re Berenguer)*, 77 B.R. 959 (Bankr.S.D.Fla.1987). The language of the Bankruptcy Code and the history behind Section 521 indicate the provisions of Section 521 were not meant to alter a debtor's rights with regard to collateral securing a consumer debt.

As pointed out by the Court of Appeals for the Tenth Circuit in *Lowry*, when a debtor is not in default under the obligations of a consumer loan agreement and wishes to retain the collateral, nothing in the Bankruptcy Code restricts that debtor to redemption or reaffirmation. *Lowry*, 882 F.2d at 1546. The *Lowry* Court pointed to the fact Congress has provided no enforcement mechanism whatsoever with regard to the Section 521(2)(A) election.[3] *Lowry*, 882 F.2d at 1546. Furthermore, a creditor does not have any additional rights to the collateral by virtue of a debtor's failure to make a selection under Section 521. *Lowry*, 882 F.2d at 1546.

Other courts analyzing this issue have focused on the qualifying phrase "if applicable" in Section 521(2)(A). Those courts have stated that although Section 521 may require a debtor to indicate whether property will be retained or surrendered, when the debtor is not in default under the loan agreement, the options of redeeming or reaffirming are simply not applicable and need not be chosen. *See, Hunter*, 121 B.R. at 615; *Belanger*, 118 B.R. at 369–370; *In re Crouch*, 104 B.R. 770, 771 (Bankr. S.D.W.Va.1989).

The history behind Section 521 lends further support to limiting the effect of Section 521 on a debtor's rights to the collateral. After an in-depth examination of available history behind the Bankruptcy Amendments and Federal Judgeship Act of 1984, the Act which gave us the present version of Section 521, the Court in *Belanger* stated Section 521 should be given a narrow interpretation so as to preserve as much as possible the fresh start policy goal of the Bankruptcy Code. *Belanger*, 118 B.R. at 370. The Court went on to conclude Section 521 is essentially a notice provision, meant to facilitate communication of the debtor's intent to the creditor with regard to the collateral early in the bankruptcy proceeding so as to speed resolution of any conflict and avoid unnecessary expense on the part of the creditor. *Belanger*, 118 B.R. at 370–371. A similar conclusion was reached earlier in *In re Eagle*, 51 B.R. 959 (Bankr.N.D.Ohio 1985).

---

**3.** Section 704(3) lists as one of the duties of the trustee the duty to "ensure that the debtor shall perform his intention as specified in section 521(2)(B) ..." No mention is made of any duty to force an election under Section 521(2)(A).

The *Eagle* Court stated although initially there was a move to penalize debtors for failure to state an intention under Section 521, Congress chose to leave any such penalty out of the final version of the amendments in favor of "a procedure which encourages out-of-court compromise between debtor and creditor in restructuring the debt." *Eagle,* 51 B.R. at 962.

Many courts have also pointed to the comments of Congressman Rodino in response to questions regarding rights reserved to a debtor and a trustee under Section 521(2)(C). Congressman Rodino stated "the newly imposed duty on the debtor to act promptly with regard to property which is security for a creditor's claim does not affect the substantive provisions of the code which may grant the trustee or the debtor rights with regard to such property." 130 Cong.Rec. H1810 (daily ed. Mar. 21, 1984).

Omni has pointed to the structure of the Official Bankruptcy Forms related to the Section 521 election as support for its interpretation of Section 521. Form 8, Official Bankruptcy Forms. The Official Forms are, at best, weak evidence of the intent behind a Bankruptcy Code section. However, assuming the Official Forms do reflect the Congressional intent behind a particular Bankruptcy Code section, the form related to a debtor's statement of intention does not indicate a limitation on a debtor's options to those listed in the form when property is to be retained.

Omni has also cited the decision of the Court of Appeals for the Seventh Circuit in *In re Edwards,* 901 F.2d 1383 (7th Cir. 1990), in support of its position limiting Debtor's options. *Edwards,* the only Court of Appeals case other than *Lowry* to deal directly with this issue, stated "[t]he 1984 Consumer Finance Amendments to the Bankruptcy Code were intended, *inter alia,* to protect creditors from the risks of quickly depreciating assets and to keep credit costs from escalating because of the too-ready availability of discharge." *Edwards,* 901 F.2d at 1386. As was the Bankruptcy Court in *Hunter,* 121 B.R. at 616, this Court is hesitant to rely on the motives of the groups that proposed the 1984 Amendments in interpreting the ultimate legislative intent behind Section 521, particularly in light of the available legislative history. Furthermore, the "risk of depreciating assets" and the "too-ready availability of discharge" are risks inherent in loans for consumer goods. The credit industry, not the Bankruptcy Code or the courts, should be primarily responsible for minimizing these risks.

■ Omni has placed a great deal of reliance on its argument that since the filing of a bankruptcy petition results in an acceleration of all debts, and since Chapter 7, unlike other chapters of the Bankruptcy Code, provides no deceleration mechanism, allowing a debtor to retain the collateral and to pay under the original agreement is synonymous with redemption by installments. This Court agrees with Omni's assertion that redemption by installments is not permitted under the provisions of the Bankruptcy Code. *In re Harp,* 76 B.R. 185 (Bankr.N.D.Fla.1987). First, it should be noted, absent the acceleration upon filing theory, allowing a Chapter 7 debtor to retain property while paying under the original obligation, without more, simply is not redemption by installments. Under Section 722, a debtor may redeem collateral from a creditor by paying the creditor the amount of the creditor's allowed secured claim, which is determined by valuing the subject collateral. As stated in *Donley,* 131 B.R. at 194, "[t]he continuation of payments under the original obligation will result in payments for the term of the contract, regardless of the value of the collateral. The lien remains intact until the financing contract is paid in full, not just until the value of the collateral has been paid."

■ Adding the acceleration upon filing theory to the above analysis does not advance Omni's position. The Court accepts the argument that Section 502(b) causes acceleration of all debts for the purposes of allowance of claims. However, acceleration upon filing is merely meant to allow a creditor to file a claim for the entire amount of indebtedness, even where the debtor is not in default under the loan

agreement. Consequently, the idea of acceleration upon filing must be kept within that context. The acceleration is not meant to alter the allocation of rights under the Bankruptcy Code in the collateral securing the debt, rather it is meant only to allow for a determination of a creditor's claim and assist in the efficient administration of the bankruptcy case. Omni's argument would result in punishment of Debtor for filing bankruptcy. This Court does not believe the Bankruptcy Code or its underlying fresh start policy envisions such a result and instead agrees with the Tenth Circuit's statement that "mere filing of the petition has not put [the debtor] in any more jeopardy than that which existed prior to the filing of the petition." *Lowry*, 882 F.2d at 1546.

## II. Debtor's Right to Value Under Section 506

 The remaining issue, beyond Debtor's right merely to retain the collateral and continue to pay under the original loan agreement, is Debtor's right to determine the value of Omni's secured position under Section 506(a) and eliminate the lien on the remaining portion under Section 506(d), with the anticipated result that Debtor would retain the collateral and pay under the original agreement, but only up to the amount of Omni's secured claim. The unsecured claim created by the lien stripping would receive a disbursement, if any, from the bankruptcy estate.[4]

The Supreme Court's recent decision in *Dewsnup v. Timm*, —— U.S. ——, 112 S.Ct. 773, 116 L.Ed.2d 903 (Jan. 15, 1992), seems to preclude the result sought by Debtor in this case. In *Dewsnup*, the Chapter 7 debtors owned two parcels of land encumbered by liens in excess of the land's value. The debtors attempted to value the property under Section 506(a) in order to bifurcate the creditor's claim into secured and unsecured portions based on the court-determined value and then strip the lien from the unsecured portion via Section 506. According to the Court of Appeals for the Tenth Circuit, the debtors' ultimate intention was to "redeem" the property from the creditor by paying the fair market value of the property, *i.e.*, the Section 506(a) secured portion of the claim. *Dewsnup v. Timm (In re Dewsnup)*, 908 F.2d 588, 589 (10th Cir.1990).

 The Supreme Court, affirming the Tenth Circuit's decision, stated Section 506 was not intended to be used in this manner. The Court held "allowed secured claim" referred to in Section 506(d) should not be read in terms of the language used in Section 506(a). A claim is an allowed secured claim for Section 506(d) purposes if it is allowed under the provisions of Section 502.[5] *Dewsnup*, —— U.S. ——, ——, 112 S.Ct. 773, 778, 116 L.Ed.2d 903. In other words, a lien can only be voided under Section 506(d) if the claim on which the lien is based is not an allowed claim under Section 502.[6]

---

**4.** For an in-depth analysis supporting Debtor's position, *see generally,* Joann Henderson, *The Gaglia–Lowry Brief: A Quantum Leap from Strip Down to Chapter 7 Cram Down,* 8 Bankr. Dev.J. 131 (1991).

**5.** The Supreme Court's analysis is reminiscent of the pre–1984 version of Section 506(d) which provided:

To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void, unless—

(1) a party in interest has not requested that the court determine and allow or disallow such claim under section 502 of this title; or

(2) such claim was disallowed only under section 502(e) of this title.

The reference to determining whether a claim is allowed or disallowed in Section 506(d)(1) had

been interpreted as requiring a claim to be disallowed under Section 502 in order for the claim to be voided under Section 506(d). The 1984 Amendments to Section 506(d) deleted the general cross-reference to Section 502, which could be interpreted as an indication that a determination of whether or not a claim is allowed under Section 502 is unnecessary for lien voidance under Section 506(d). Margaret Howard, *Stripping Down Liens: Section 506(d) and the Theory of Bankruptcy,* 65 Am.Bankr.L.J. 373, 375–381 (1991).

**6.** The Supreme Court's decision effectively overrules the contrary position taken by the Court of Appeals for the Eleventh Circuit in *Folendore v. U.S. Small Business Administration (In re Folendore),* 862 F.2d 1537 (11th Cir.1989).

Although *Dewsnup* involved real property, presumably it would also apply to use of Section 506 with regard to personal property. In fact, *Dewsnup* may have far-reaching effects over any type of property and all chapters of the Bankruptcy Code.[7] Since it appears Omni's claim in this case is an allowed claim as defined by Section 502, the Supreme Court's analysis in *Dewsnup* would prevent Debtor from using Section 506(d) to void any portion of Omni's lien.

Any interpretation of the Bankruptcy Code must proceed within the context of a bankruptcy case, *i.e.*, how will the trial court apply the statutory interpretation to the operable facts of the case. The Tenth Circuit's opinion in *Dewsnup* would not allow lien stripping pursuant to Section 506 unless the estate has an interest in the property being valued.[8] The Supreme Court, although acknowledging the Tenth Circuit's holding and affirming its decision, reduced the utility of Section 506 even further. The Tenth Circuit recognized the usefulness of Section 506 as a sword to bifurcate secured and unsecured claims on property by way of valuation, but limited the property which could be valued. The Supreme Court has placed limits on the use of the sword. Although specifically limiting their decision to the facts, the Supreme Court majority found since the secured creditor's claim was an allowed secured claim under Section 502, no portion of the lien could be voided under Section 506(d). The operational conclusion suggests the only way a lien can be voided is by objecting to the secured creditor's claim, if one was filed, or by use of sections of the Bankruptcy Code other than Section 506.[9]

■ This Court concludes, from the present status of the law, Chapter 7 debtors may not void any portion of liens on real or personal property by valuation under Section 506. If the debtor wishes to retain either abandoned or exempt property, other than by paying the contractual amount of the debt, the debtor is limited to the statutory avenues of reaffirmation under Section 524(c), redemption under Section 722 or avoidance of liens via Section 522(f). This Court further holds Chapter 7 debtors have no standing to seek to void liens on property of the estate unless the property is abandoned or exempt and then only pursuant to Section 722 or Section 522(f).

Accordingly, it is

ORDERED, ADJUDGED AND DE-CREED that Debtor's Motion to Determine Secured Status is denied. As long as she remains current on her obligation to Omni, Debtor may retain the collateral and continue to pay under the original obligation until the full amount due Omni is paid. Alternatively, Debtor may file a motion to redeem under Section 722 of the Bankruptcy Code.

DONE AND ORDERED.

---

**7.** *See In re Davidoff,* 136 B.R. 567, (Bankr. M.D.Fla.1992) (order denying debtors' second amended motion to value security).

**8.** The Tenth Circuit stated the estate has no interest in property abandoned by the trustee pursuant to Section 554. *Dewsnup,* 908 F.2d at 590.

**9.** It should be noted the Supreme Court expressed no opinion as to whether the phrase "allowed secured claim" in Section 506 has the same meaning in other Bankruptcy Code provisions such as Section 722.