**In re Michael PARKER and Cheryl Parker, Debtors.**

**Bankruptcy No. 91–11139M.**

United States Bankruptcy Court,
W.D. Arkansas,
El Dorado Division.

June 23, 1992.

Martha Jett McAlister, Little Rock, Ark., for Green Tree Acceptance, Inc.

Jimmy D. Eaton, Little Rock, Ark., for debtors.

William Randal Wright, Hope, Ark., trustee.

## ORDER

JAMES G. MIXON, Bankruptcy Judge.

On June 10, 1991, Michael and Cheryl Parker (debtors) filed a voluntary petition for relief under the provisions of chapter 7 of the United States Bankruptcy Code. William Randal Wright, Esq., was appointed trustee. The debtors' assets include a 1989 Sunrizon Ranger mobile home that they claim as exempt property under the homestead exemption statutes. Green Tree Acceptance, Inc. (Green Tree) holds a validly perfected security interest in the mobile home to secure the repayment of the sum of $16,900.00. The schedules included the debtors' statement of intentions that reflected that the debtors "intend to keep [the mobile home] and make arrangements with creditor." The parties stipulated that the debtors are current on their payments to Green Tree.

On September 3, 1991, Green Tree filed a motion for an order requiring the debtors to either redeem, reaffirm, or surrender the mobile home. The debtors oppose the motion and argue that they should be allowed to retain the mobile home and continue to make the monthly payments without reaffirming the debt. A hearing was held on November 15, 1991, at which time the parties stipulated the facts and submitted the matter on briefs.

The proceeding before the Court is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), and the Court has jurisdiction to enter a final judgment in the case.

---

## DISCUSSION

11 U.S.C. § 521 describes some of the duties a debtor has upon the filing of a bankruptcy petition, such as the duty to file a list of creditors and a schedule of assets and liabilities. 11 U.S.C. § 521(2)(A), (B), and (C) provides in relevant part as follows: [1]

(2) if an individual debtor's schedule of assets and liabilities includes consumer debts which are secured by property of the estate—

(A) within thirty days ... the debtor shall file with the clerk a statement of his intention with respect to the retention or surrender of such property and, if applicable, specifying that such property is claimed as exempt, that the debtor intends to redeem such property, or that the debtor intends to reaffirm debts secured by such property;

(B) within forty-five days after the filing of a notice of intent ... the debtor shall perform his intention with respect to such property, as specified by subparagraph (A) of this paragraph; and

(C) nothing in subparagraphs (A) and (B) of this paragraph shall alter the debtor's or the trustee's rights with regard to such property under this title.

Green Tree argues that subparagraphs (2)(A), (B) and (C) restrict the debtors to only three alternatives with respect to their mobile home: (1) to surrender the property, (2) to redeem the property, or (3) to reaffirm the underlying debt. The debtors argue that they are not limited to these three alternatives and should be allowed to retain and pay for the mobile home without being required to reaffirm the underlying debt.

11 U.S.C. § 521 is not easy to discern because the section is poorly drafted and ambiguous. The language of section 521 supports at least two reasonable interpretations. The debtors' construction of section 521 is more consistent with the plain language and legislative history than Green Tree's interpretation. The legislative history of 11 U.S.C. § 521 is explained by Judge

Small in *In re Belanger*, 118 B.R. 368 (Bankr.E.D.N.C.1990), *aff'd sub nom. Home Owners Funding Corp. of Am. v. Belanger*, 128 B.R. 142 (E.D.N.C.1990), *aff'd*, 962 F.2d 345 (4th Cir.1992):

The idea for § 521(2)(A) came from a proposal submitted by a coalition of bankers, credit unions, finance companies, oil companies and retailers. The proposal was called the "Proposed Consumer Bankruptcy Improvements Act of 1981" and was described in hearings before the Senate's Subcommittee on Courts of the Committee on the Judiciary, On April 3 and 6, 1981. *Hearings Before the Subcomm. on Courts of the Sen. Comm. on the Judiciary*, 97th Cong., 1st Sess. J–97–11 (1981). Several witnesses appearing on behalf of the coalition and on behalf of the American Bankers Association explained how secured creditors in consumer chapter 7 cases often had no information concerning their collateral. The automatic stay prohibits contact with the debtor and typically the secured creditor would know nothing about the fate of its collateral. The complaint was that the secured creditor would often incur the expense of filing an adversary proceeding to lift the stay only to learn that the debtor all along intended to surrender the property without a contest. The solution to the problem was to require an early disclosure of the debtor's intention with respect to the property and early performance. If the creditor were to know what the debtor intended to do with the collateral, it would know how to proceed, such as by entering into a reaffirmation agreement, picking up the collateral, or seeking to modify the stay.

The many consumer amendments proposed by the coalition of consumer lenders were the subject of considerable debate and consumer bankruptcy amendments were proposed by the Senate Judiciary Committee in 1982 and in 1983. In its report accompanying S. 200, the Sen-

---

**1.** Subsections 2(A), (B), and (C) were added by § 305 of the Consumer Credit Amendment with-

in the Bankruptcy Amendment of 1984.

ate Judiciary Committee stated that the amendments to § 521 "encourage the debtor and creditor to settle issues involving secured debt without judicial proceedings, but also enable the parties to identify disputed matters at an early stage so that they may be resolved at the meeting of creditors. This will avoid the time and expense of separate and delayed proceedings." S.Rep. No. 97–446, 97th Cong., 2d Sess. 41 (May 21, 1982).

There was no Senate or House Report which accompanied the Bankruptcy Amendments and Federal Judgeship Act of 1984 and the legislative history is "woefully inadequate." *In re Barriger,* 61 B.R. 506, 509 (Bankr.W.D.Tenn.1986), quoting *In re Eagle,* 51 B.R. 959, 961 (Bankr.N.D.Ohio 1985). The closest legislative statement interpreting § 521(2) is a statement made by Representative Rodino in response to a request by Representative Synar that he "explain what rights are reserved to the debtor and trustee under § 521(2)(C)." 130 Cong. Rec. H1810 (daily ed. Mar. 21, 1984). According to Chairman Rodino, the duty imposed under § 521(2) "does not affect the substantive provisions of the code which may grant the trustee or debtor rights with regard to such property." *Id.* It appears from that statement that the debtor's rights with respect to the property were to be left intact.

*In re Belanger,* 118 B.R. at 370–72 (footnotes omitted). Section 521 is "essentially a notice requirement adopted to permit secured creditors to ascertain the debtor's intentions early in the case." *Id.* at 370, citing H. Sommer, "The 1984 Changes in Consumer Bankruptcy Law," 31 *Practical Lawyer* 45, 55 (Jan. 1985). As Judge White stated in *In re Eagle,* 51 B.R. 959, 962 (Bankr.N.D.Ohio 1985):

[l]egislative history also clearly shows that the notice and time limitations of section 521(2) are not intended to abrogate the debtors' substantive rights under the Code.

Section 521(2)(C) provides that "nothing in subparagraphs (A) and (B) of this paragraph shall alter the debtor's or the trustee's rights with regard to such property

under this title." The substantive Code sections dealing with redemption and reaffirmation are permissive, not mandatory. 11 U.S.C. § 722 provides that a "debtor *may* ... redeem" personal property by paying the secured creditor the amount of the allowed secured claim. 11 U.S.C. § 722 (emphasis added). Similarly, 11 U.S.C. § 524 provides that a debtor may reaffirm a debt only if the reaffirmation agreement between the debtor and the holder of the claim "represents a fully informed and voluntary agreement by the debtor." 11 U.S.C. § 524(c)(3)(A). Therefore, interpreting § 521(2)(A) and (B) literally to limit a debtor's alternatives would, in effect, result in a tacit repeal of the permissive nature of the rights conferred upon a debtor by 11 U.S.C. §§ 524 and 722. There is no clear indication that Congress ever intended to repeal portions of sections 524 and 722.

The issue of whether 11 U.S.C. § 521 requires a debtor to choose either redemption, reaffirmation, or surrender has been decided by many courts and has resulted in a split of authority. The Seventh Circuit Court of Appeals has held that the provisions of 11 U.S.C. § 521 are mandatory and require a debtor to choose one of the three alternatives. *In re Edwards,* 901 F.2d 1383 (7th Cir.1990). The Fourth and Tenth Circuit Courts of Appeals have held that a debtor is not limited to the three alternatives set out in 11 U.S.C. § 521. *Home Owners Funding Corp. v. Belanger (In re Belanger),* 962 F.2d 345 (4th Cir.1992); *Lowry Fed. Credit Union v. West,* 882 F.2d 1543 (10th Cir.1989). *See also In re Donley,* 131 B.R. 193, 195 (Bankr.N.D.Fla. 1991); *In re Hunter,* 121 B.R. 609, 612–13 (Bankr.N.D.Ala.1990); *In re Crouch,* 104 B.R. 770 (Bankr.S.D.W.Va.1989); *Century Bank at Broadway v. Peacock (In re Peacock),* 87 B.R. 657, 660 (Bankr.D.Colo.1988). This latter view is also supported by a leading treatise on bankruptcy. *Accord* 3 *Collier on Bankruptcy* ¶ 521.09A[2] (15th ed. 1991). The issue has not been decided by the Eighth Circuit Court of Appeals.

In *Edwards,* the Seventh Circuit based its decision on what it perceived was the

legislative intent behind the enactment of 11 U.S.C. § 521. Judge Cudahy, writing for the Court, stated:

> The 1984 Consumer Finance Amendments to the Bankruptcy Code were intended, *inter alia,* to protect creditors from the risks of quickly depreciating assets and to keep credit costs from escalating because of the too-ready availability of discharge. *See In re White,* 49 B.R. 869, 872 (Bankr.W.D.N.C.1985). This legislative purpose speaks strongly against permitting debtors to improve their position dramatically against secured creditors by relieving them of personal liability. When a debtor is relieved of personal liability on loans secured by collateral, the debtor has little or no incentive to insure or maintain the property in which a creditor retains a security interest. The value of the collateral may fall below the level of the loan, leaving the creditor undersecured and driving up future costs of credit.

*In re Edwards,* 901 F.2d at 1386 (footnotes omitted). Most of the cases construing § 521 to require a debtor to reaffirm, redeem, or surrender the property have relied on the same reasoning used in *Edwards* to support their conclusion. *E.g., In re Taylor,* 138 B.R. 1018, 1020 (Bankr. M.D.Ga.1992); *Bank South, N.A. v. Horne (In re Horne),* 132 B.R. 661, 663 (Bankr. N.D.Ga.1991); *In re Chavarria,* 117 B.R. 582, 584 (Bankr.D.Idaho 1990); *In re Whitaker,* 85 B.R. 788, 792–93 (Bankr.E.D.Tenn. 1988). *See generally* Debra S. Friedman, *11 U.S.C. Section 521(2)(A): Fresh Start or Head Start?,* 22 Pac.L.J. 1239 (1991). However, the rationale relied on in the *Edwards* case is subject to criticism. For example, in the case of *In re Belanger* Judge Small stated:

> In *Edwards* the Seventh Circuit concluded that "[w]hen a debtor is relieved of personal liability on loans secured by collateral, the debtor has little or no incentive to insure or maintain the property in which a creditor retains a security interest." 901 F.2d at 1386. It is doubtful that a debtor would fail to insure or maintain his residence, and his investment in it, simply because he no longer

has personal liability for the underlying debt. Furthermore, the failure to insure or the failure to maintain the collateral are typically events of default which would permit the secured creditor to accelerate the indebtedness and repossess the collateral. In fact, default clauses which permit the lender to declare a default in the event that the creditor deems its security interest insecure are specifically authorized by the Uniform Commercial Code and may be exercised by a secured lender if it has a good faith belief that the prospect for payment is impaired. *See* J. White and R. Summers, *Uniform Commercial Code* § 25–3 (3d ed. 1990) (discussing Uniform Commercial Code § 1–208).

*In re Belanger,* 118 B.R. at 372.

Green Tree's interpretation of 11 U.S.C. § 521 requires two assumptions. First, that redemption, reaffirmation, or surrender are the only three actions that are taken in regard to property subject to a lien in a chapter 7 case and, second, that the debtors control all three alternatives. Both assumptions are incorrect. For example, the trustee frequently sells encumbered property and, if there is equity in the property, pays the secured claim from the sale proceeds and distributes the remaining proceeds to unsecured creditors. In this common scenario, none of the three so-called mandatory alternatives listed in 11 U.S.C. § 521 have occurred. Therefore, applying the logic of Green Tree's argument, the trustee's power to sell encumbered non-exempt property of the estate has been eliminated by section 521 because sale to a third party is not one of the three alternatives listed.

When a chapter 7 case is filed, all property of the debtor becomes property of the estate including exempt property. 11 U.S.C. § 541. The trustee abandons property of the estate in a chapter 7 case usually because there is no equity in the property or the property is exempt. In the event property is abandoned by the trustee, the debtor and the lien creditor are restored to all prepetition rights in the property. 4 *Collier on Bankruptcy* ¶ 554.02[2] (15th

ed.1991). The interplay between the Bankruptcy Code provisions governing abandonment and provisions governing discharge of the debtors' personal liability create the alternative that the debtors have disclosed here, i.e., that the debtors regain possession of the property from the trustee and receive a discharge of the underlying debt.

Moreover, Green Tree would not be left substantially more vulnerable than any other lender under a consumer installment sales contract. The reality of most secured loans is that the lender looks to its collateral to guarantee repayment and not the underlying liability of the borrower. The lender's rights in the collateral are adequately protected under state law, contrary to the fears expressed by the court in *Edwards*. *In re Donley*, 131 B.R. at 195; *In re Belanger*, 118 B.R. at 372.

Green Tree points out that both of the other two bankruptcy judges in this district have held that 11 U.S.C. § 521 requires a chapter 7 debtor to either reaffirm the underlying debt, redeem, or surrender the property. *In re Kennedy*, 137 B.R. 302 (Bankr.E.D.Ark.1992), Scott, J., and *In re Griffin*, 143 B.R. 535, (Bankr.E.D.Ark. 1991), Fussell, J. Both *Kennedy* and *Griffin* relied on the rationale of *In re Edwards*, 901 F.2d at 1383 and *In re Bell*, 700 F.2d 1053 (6th Cir.1983).

The reasons for not adopting the rationale of the *Edwards* case have been discussed. *Bell* was rendered prior to the adoption of the 1984 amendments to 11 U.S.C. § 521. In addition, *Bell* concerned the issue of whether redemption under 11 U.S.C. § 722 could be made in installments. The issue in *Bell* is not on point in this case because the debtors have not indicated an intent to redeem their mobile home.

Therefore, for the reasons stated, Green Tree's motion to compel the debtors to redeem, reaffirm, or surrender the collateral securing Green Tree's claim is denied.

IT IS SO ORDERED.