**In re Cynthia L. SOKOLOWSKI, Debtor.**

**Cynthia L. SOKOLOWSKI, Plaintiff,**

**v.**

**BANKBOSTON, Defendant.**

**Bankruptcy No. 97–21854.
Adversary No. 98–2048.**

United States Bankruptcy Court,
D. Connecticut.

June 29, 1998.

David F. Falvey, Groton, CT, for plaintiff.

Matthew J. McGowan, Salter, McGowan, Swartz & Sylvia, Inc., c/o Linda C. Hadley, Krasow, Garlick & Hadley, Hartford, CT, for defendant.

## MEMORANDUM OF DECISION

ROBERT L. KRECHEVSKY, Bankruptcy Judge.

### ISSUE

The issue in this matter is the enforceability, after a debtor's Chapter 7 case has closed, of two clauses in a retail installment contract ("the contract"), secured by the debtor's automobile, providing that a bankruptcy filing by the buyer is an event of default permitting repossession of the automobile. Cynthia L. Sokolowski, the debtor ("the debtor"), has raised the issue in a complaint she filed against BankBoston ("the Bank"), the holder of the contract. The complaint seeks a declaratory judgment and an injunction enjoining the Bank from repossessing the automobile solely because the debtor filed a bankruptcy petition. The parties, agreeing that the adversary proceeding is a core proceeding, have submitted the matter to the court for determination upon a stipulation of facts and the parties' briefs.

### BACKGROUND

The debtor, then aged 54, on or about March 19, 1996, executed a retail installment contract for $10,090.00, payable over five years at 10.9 percent interest, to finance the purchase of a 1993 Pontiac Grand Am ("the automobile" or "the vehicle") from The M.J. Sullivan Automotive Corner ("the seller"). The automobile purchase price was $10,-100.00. The seller simultaneously assigned the contract to the Bank. The contract, in which the debtor granted a security interest in the automobile to the contract holder, contains the following paragraphs:

10. DEFAULT. You will be in default under the contract if any of the following things happen:

. . . .

(b) You declare or are forced into bankruptcy.

. . . .

12. REPOSSESSION. If you are in default, we can also take and sell the Collateral, even if we are not properly shown a "lienholder." If we decide to do this, you agree to deliver the Collateral to us. If you do not, we have the right to peaceably enter the premises where the Collateral is kept and take it ourselves. We may do this without going to court and without giving you advance notice. If we take and sell the Collateral, we will apply the proceeds of the sale as required by law. . . .

*Exh. 2.*

The debtor filed a Chapter 7 petition on May 1, 1997. The court granted her an uncontested discharge on September 29, 1997. On July 7, 1997, the Chapter 7 trustee filed a report of no distribution, and, on November 17, 1997, the court closed the case. The Chapter 7 trustee did not in any way administer the automobile as an estate asset.

During the Chapter 7 case, the debtor and the Bank entered into a reaffirmation agreement, but within the statutory rescission period the debtor rescinded the agreement. The debtor, at all relevant times, has been current in her monthly payments to the Bank and has maintained adequate insurance coverage on the automobile. At the time the debtor filed her Chapter 7 petition, she owed the Bank approximately $7,900 under the contract. The parties have not stipulated to the value of the automobile on the petition date.

The Bank, on December 2, 1997, after the debtor's Chapter 7 case was closed, sent to the debtor and to her attorney a letter which included the following statement:

Please be advised that by virtue of your bankruptcy filing, you are in default of the provisions of the Retail Installment Contract, as provided under ¶ 10 thereof. Pursuant to ¶ 12 of such Contract, the Bank has the right to proceed to repossess the Vehicle. You are hereby notified that on or after *December 23, 1997*, the Bank intends to repossess the Vehicle. (emphasis in original)

*Exh. 3.*

The debtor thereafter moved to reopen her Chapter 7 case in order to bring the declara-

tory judgment action. The court reopened the case on March 26, 1998, and the debtor filed the present amended complaint on April 2, 1998. The debtor has continued to make her monthly payments to the Bank under an agreement with the Bank that such payments are not to be considered a waiver. The Bank has agreed with the debtor not to attempt to repossess the automobile pending the court's ruling in this matter. The debtor represents that she needs the automobile "to continue with her economic existence."[1] *Order Granting Pl.'s Mot. Amend Agreed Statement of Facts.*

## DISCUSSION

The debtor, in her brief, submitted a list of rulings in which courts have refused to enforce default-on-bankruptcy clauses. Four courts have held that such clauses are invalid post bankruptcy. *See GNC Community Fed. Credit Union v. Stefano (In re Stefano),* 134 B.R. 824, 827 (Bankr.W.D.Pa.1991) (finding that a bankruptcy court may, post bankruptcy, determine that a default-on-bankruptcy clause is unenforceable because it defeats the purpose of providing a fresh start to debtors and, pursuant to Bankruptcy Code § 105(a), prohibit a creditor from enforcing such clause); *Century Bank at Broadway v. Peacock (In re Peacock),* 87 B.R. 657, 659–60 (Bankr.D.Colo.1988) (concluding that default-on-bankruptcy clauses are unenforceable both during and after bankruptcy because they thwart the debtor's fresh start and impose a penalty on debtors for exercising their constitutional right to file bankruptcy); *In re Cassell,* 41 B.R. 737, 740 (Bankr.E.D.Va. 1984) (refusing to enforce a default-on-bankruptcy clause after the debtor had received a discharge because such clauses are unenforceable as a matter of law); *Brock v. Amer. Sec. Bank (In re Brock),* 23 B.R. 998, 1003 (Bankr.D.C.1982) (finding a default-on-bankruptcy clause unenforceable post discharge because "(1) to permit repossession by sole reliance on invocation of the bankruptcy clause would in effect result in a forfeiture, which courts of equity traditionally abhor"

and "(2) the invocation of such a clause is contrary to the well-established public policy now evinced by the provisions of the Bankruptcy Code").

Other courts, while not reaching the question of their validity post discharge, have declined to enforce default-on-bankruptcy clauses before the debtor received a discharge. *See Riggs Nat'l Bank of Wash., D.C. v. Perry (In re Perry),* 729 F.2d 982, 984–85 (4th Cir.1984) (holding default-on-bankruptcy clauses unenforceable as a matter of law because they "clearly intrude upon" a "clear Congressional purpose to create a way by which debtors may obtain a fresh start towards reorganization of their financial obligations"); *In re Winters,* 69 B.R. 145, 146–47 (Bankr.D.Or.1986) (construing Bankruptcy Code § 541(c)(1)(B) as voiding default-on-bankruptcy clauses, which "threaten[ ] the fresh start which is the purpose of bankruptcy"); *In re Bryant,* 43 B.R. 189, 195–96 (Bankr.E.D.Mich.1984) (holding that Code § 541(c)(1)(B) invalidates default-on-bankruptcy clauses and noting that "[t]he Code is devoid of language which would revive or reinstate such clauses," which "create a penalty upon individuals who seek the protection afforded by the Bankruptcy Code" and "are a form of discriminatory treatment the bankruptcy laws were intended to prohibit"); *First and Merchants Nat'l Bank v. Ballance (In re Ballance),* 33 B.R. 89, 91 (Bankr.E.D.Va.1983) ("A part of the 'fresh start' Congress provided is invalidation of those boiler plate, ipso facto, bankruptcy clauses"); *General Motors Acceptance Corp. v. Rose (In re Rose),* 21 B.R. 272, 277 (Bankr.D.N.J.1982) (concluding that default-on-bankruptcy clauses are unenforceable because, if valid, they would "defeat the purpose of providing a 'fresh start' to debtors" and "render a penalty on debtors.")

The Bank, on its part, proffers in its brief a list of authorities concluding that there is no basis in the Bankruptcy Code, public policy, or legislative intent, to deny post-discharge or post-case-closing enforcement of a

---

1. Although not in the stipulation of facts, the debtor's voluntary bankruptcy petition states that she, a single woman, is employed as a Bingo Floor Worker at Foxwoods Casino, with an annual salary for the past two years of $15,448.80. The petition lists her residence in Windsor, Connecticut. The Foxwoods Casino is located in Ledyard, Connecticut, some 40 miles distant.

default-on-bankruptcy clause. *See General Motors Acceptance Corp. v. Bell (In re Bell)*, 700 F.2d 1053, 1058 (6th Cir.1983) (finding that once the trustee abandoned the vehicle and it was no longer property of the estate, the bankruptcy clause became effective and the debtors were no longer entitled to possession); *Forlini v. Northeast Sav., F.A.*, 200 B.R. 9, 12–13 (D.R.I.1996) (suggesting that the bankruptcy court lacked authority to enjoin secured creditors from enforcing a default-on-bankruptcy clause after termination of the bankruptcy proceeding); *In re Mitchell*, 85 B.R. 564, 566 (Bankr.D.Nev.1988) ("[W]here the asset is no longer part of the bankruptcy estate, the [bankruptcy default] clause becomes operative and enforceable"); *Chrysler Credit Corp. v. Schweitzer (In re Schweitzer)*, 19 B.R. 860, 867 (Bankr. E.D.N.Y.1982) (finding that the Bankruptcy Code's legislative history suggests that the prohibition on default-on-bankruptcy clauses is inoperative where the asset is no longer part of the estate and that, in the absence of a specific Code prohibition, such clauses are not against public policy).

Although this court, if left to its own analysis, would side with those authorities cited by the debtor, such analysis is not required. The court believes that the thorough and thoughtful ruling in *In re Boodrow*, 126 F.3d 43 (2nd Cir.1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 1055, 140 L.Ed.2d 118 (1998), is precedential and mandates the result, even though the present issue was not specifically addressed by the *Boodrow* court.

In *Boodrow*, the court affirmatively answered the question "whether a bankruptcy court may allow a debtor, who files for bankruptcy and is 'current' on a car-purchase loan, to retain the collateral securing the loan and continue making monthly payments under the original loan agreement." 126 F.3d at 45. The court did not frame the question so as to limit its holding to pre-case closing situations. The *Boodrow* court adopted the concept of "reinstatement" to describe the situation when the debtor "retain[s] the collateral and continue[s] to perform under the loan agreement." 126 F.3d at 49. The court quoted approvingly from an article describing reinstatement as

the debtor's right to retain the collateral by continuing regular payments under the security agreement and thereby completing the contract, albeit a somewhat different contract because any personal obligation has been discharged. To qualify for reinstatement, debtors cannot be in default, *except for technical defaults such as bankruptcy clause defaults*, and must pay the entire debt in accordance with the contract. This right is called reinstatement because it prevents foreclosure and reinstates the contract. Reinstatement allows debtors to continue with business as if bankruptcy had no effect on the secured creditor's position.

126 F.3d at 49 n. 6 (quoting Joann Henderson, *The Gaglia–Lowry Brief: A Quantum Leap from Strip Down to Chapter 7*, 8 BANKR.DEV.J. 131, 137 (1991) (emphasis added)).

The *Boodrow* court's discussion of the options available to a creditor after reinstatement clearly contemplated a period beyond the closing of the debtor's case. The court observed

other courts have noted that a debtor's failure, *after discharge*, to insure or maintain collateral typically permits a creditor to "accelerate the indebtedness and repossess the collateral. In fact default clauses which permit the lender to declare a default in the event that the creditor claims its security interest insecure are specifically authorized by the Uniform Commercial Code and may be exercised by a secured lender if it has a good faith belief that the prospect for payment is impaired. We thus disagree that a creditor invariably, or even probably, will lose the benefit of its bargain under the original loan agreement when a bankruptcy court permits reinstatement."

126 F.3d at 52 (emphasis added) (quoting *In re Belanger*, 118 B.R. 368, 372 (Bankr. E.D.N.C.1990), *aff'd sub nom, Home Owners Funding Corp. of Am. v. Belanger*, 128 B.R. 142 (E.D.N.C.1990), *aff'd*, 962 F.2d 345 (4th Cir.1992)).

This court concludes that under the *Boodrow* analysis and it principles, and as a necessary corollary thereof, the Bank, under

the stipulated facts, may not enforce the debtor's bankruptcy filing as an event of default entitling it to repossess the debtor's automobile.

## CONCLUSION

On the debtor's complaint for a declaratory judgment, a judgment will enter that paragraphs 10 and 12 of the retail installment contract, executed by the debtor on or about March 12, 1996, may not be enforced by the Bank, or any contract holder, solely for the reason that the debtor filed a bankruptcy petition, and BankBoston, its agents and assigns are enjoined from so enforcing such paragraphs. The debtor's request for reasonable attorney's fees is denied.